**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| RYCKMAN CREEK RESOURCES, LLC, et al., | : | Case No. 16-10292 (___) |
| | : | (Joint Administration Pending) |
| Debtors.[1] | : | |

**DEBTORS' APPLICATION FOR ENTRY OF ORDER UNDER SECTION 156(c) OF TITLE 28 OF THE UNITED STATES CODE, BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY RULE 2002, AND LOCAL BANKRUPTCY RULE 2002-1(f) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE**

Ryckman Creek Resources, LLC ("Ryckman") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), hereby apply (this "Application") to this Court for entry of an order under section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") authorizing the Debtors' employment and retention of Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent (the "Claims and Noticing Agent") in connection with the Chapter 11 Cases (defined below). In support of the Application, the Debtors rely upon and incorporate by

[1] The Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers, are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

reference the Declaration of Robert D. Albergotti, Vice President of Restructuring of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed with the Court concurrently herewith, and the Affidavit of Evan Gershbein, Vice President of Corporate Restructuring Services of KCC (the "Gershbein Affidavit"). In further support of the Application, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Section 156(c) of Title 28 of the United States Code and Bankruptcy Code section 105(a). Such relief is also warranted under Bankruptcy Rule 2002 and Rule 2002-1(f) of the Local Bankruptcy Rules.

3. Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Application if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

4. On February 2, 2016 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

5. The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      To date, no creditors' committee has been appointed in the Chapter 11

Cases by the Office of the United States Trustee for the District of Delaware (the "United States

Trustee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      The Company was formed to engage in the acquisition, development,

marketing, and operation of an underground natural gas storage facility (the "Ryckman Creek

Facility"), located in Uinta County, Wyoming.  The Ryckman Creek Facility is a 50 billion cubic

foot storage facility with a working gas capacity of approximately 42 billion cubic feet.  It is

located approximately 25 miles from the Opal Hub, where five major interstate gas pipelines

converge, allowing for distribution to several key consumer markets, including California,

Nevada, the Pacific Northwest, and the Midwest.

8.      Additional factual background information regarding the Debtors,

including their business operations, their corporate and capital structure, and the events leading

to the Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

9.      By the Application, the Debtors request an order appointing KCC to act as

the claims and noticing agent of the Court (the "Claims and Noticing Agent"), in order to assume

full responsibility for the distribution of notices and the maintenance, processing, and docketing

of proofs of claim filed in the Chapter 11 Cases.  The Debtors request that KCC's appointment

be effective nunc pro tunc to the Petition Date, subject to that certain agreement for services,

dated as of January 21, 2016 by and between KCC and the Debtors (such agreement together

with all amendments, modifications, renewals thereof and all documents ancillary thereto or

otherwise entered into in connection therewith, are collectively referred to herein as the

"Services Agreement"), a copy of which is attached hereto as Exhibit A and incorporated by

reference herein. Prior to selecting KCC to act as Claims and Noticing Agent, the Debtors obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection from a competitive process. The Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of service and expertise. Accordingly, the Debtors' selection of KCC as Claims and Noticing Agent satisfies the Court's Protocol For The Employment Of Claims And Noticing Agents Under 28 U.S.C. § 156(c).[2] For the reasons set forth below, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest and therefore should be granted.

**KCC'S QUALIFICATIONS**

10. As described in the First Day Declaration, the Debtors have hundreds of potential creditors as well as other parties in interest in the Chapter 11 Cases. Although the office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk's Office") ordinarily would serve notices on the Debtors' creditors and other parties in interest and administer claims against the Debtors, the Clerk's Office may not have the resources to undertake such tasks, especially in light of the tight timelines that frequently arise in chapter 11 cases.

11. Accordingly, the Debtors propose to engage KCC to act as the Claims and Noticing Agent. This retention is the most effective and efficient manner of noticing the hundreds of creditors and parties in interest of the filing of the Chapter 11 Cases and other

[2] By a separate, forthcoming application, the Debtors will also seek entry of an order authorizing the employment and retention of KCC to provide certain administrative services to the Debtors pursuant to sections 105(a), 327(a), 328, and 1107(b) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1 in accordance with the Court's Protocol For The Employment Of Claims And Noticing Agents Under 28 U.S.C. § 156(c).

developments in the Chapter 11 Cases. In that capacity, KCC will transmit, receive, docket, and maintain proofs of claim filed in connection with the Chapter 11 Cases.

12. KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, and other related services critical to the effective administration of chapter 11 cases. Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing and claims processing of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest. Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules, and the provisions of any orders entered by this Court.

13. KCC has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent in many large bankruptcy cases in this District and other jurisdictions. See, e.g., In re Quiksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015); In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 3, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[3]

[3] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders, however, are available on request.

14. By appointing KCC as the Claims and Noticing Agent in these cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's Office will be relieved of the administrative burden of processing what may be an overwhelming number of claims. In further support of this Application, the Debtors submit the Gershbein Affidavit, attached hereto as Exhibit B.

**SERVICES TO BE PROVIDED**

15. This Application pertains only to the work to be performed by the Claims and Noticing Agent under the delegation of duties of the Clerk's Office permitted by 28 U.S.C. § 156(c) and Local Bankruptcy Rule 2002-1(f), and any work to be performed by the Claims and Noticing Agent outside of this scope is not covered by this Application or by any Order granting approval hereof and will be the subject of a separate application by the Debtors. Specifically, KCC will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including:

  (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under Bankruptcy Code section 341(a);

  (ii) notice of any claims bar date;

  (iii) notices of transfers of claims;

  (iv) notices of objections to claims and objections to transfers of claims;

  (v) notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization, including under Bankruptcy Rule 3017(d);

  (vi) notice of the effective date of any plan; and

  (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the cases.

(b)      Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)      Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)      Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt is due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)      Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)      For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)      Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)      Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Claims and Noticing Agent, not less than weekly;

(l) Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(m) Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(n) Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or this Court, including through the use of a case website and/or call center;

(o) If the cases are converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

(p) Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(q) Within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the cases; and

(r) At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

16. KCC will follow notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's orders.

17. The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

**COMPENSATION**

18. The fees to be charged by KCC in connection with the Chapter 11 Cases are set forth in the Services Agreement. The Debtors propose that the cost of KCC's services be paid from the Debtors' estates as provided by 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A). The Debtors further propose that the cost of KCC's services be paid in the

ordinary course of business without further application to or order of the Court. KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee appointed in the Chapter 11 Cases, and any party-in-interest who specifically requests service of the monthly invoices.

19. The Debtors obtained and reviewed proposals from two (2) other court-approved claims and noticing agents, and as such, the Debtors respectfully submit that KCC's rates for its services in connection with the notice and claims processing services are competitive and comparable to the rates charged by their competitors for similar services. Prior to the Petition Date, the Debtors paid KCC an initial retainer of $10,000. KCC seeks to first apply the retainer to all prepetition invoices, and thereafter to have the retainer replenished to the original retainer amount, and thereafter to hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

**INDEMNIFICATION**

20. As part of the overall compensation payable to KCC under the terms of the Services Agreement, subject to the limitations described below, the Debtors have agreed to indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents for any and all losses, claims, damages, judgments, liabilities, and expenses (collectively, "Losses") resulting from, arising out of or relating to KCC's performance under the Services Agreement.

21. The Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from that person's

negligence, fraud, or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of the KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to that person's negligence, fraud, or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order.

22. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing the Chapter 11 Cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Application Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This paragraph 22 is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.

**KCC'S DISINTERESTEDNESS**

23. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC

employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. Except as may be disclosed in the Gershbein Affidavit, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in Bankruptcy Code section 327(a) and as defined in Bankruptcy Code section 101(14), as modified by the Bankruptcy Code section 1107(b). If any new facts or relationships are discovered regarding KCC' s relationships with parties in interest in these cases, the Debtors understand that KCC will file a supplemental disclosure with the Court.

24. KCC represents, among other things, that:

(a) It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and noticing agent;

(b) By accepting employment in this bankruptcy case, KCC waives any rights to receive compensation from the United States government in connection with this case;

(c) In its capacity as claims and noticing agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d) It shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases; and

(e) It is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) with respect to the matters upon which it is engaged.

25. Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

**NOTICE**

26. Notice of the Application shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' prepetition

secured lenders; (c) counsel to the agent for the Debtors' postpetition secured lenders; (d) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in the Chapter 11 Cases; and (e) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

27. No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      February 2, 2016

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        */s/ Sarah E. Pierce*
        Sarah E. Pierce (I.D. No. 4648)
        One Rodney Square
        P.O. Box 636
        Wilmington, Delaware 19899-0636
        Telephone: (302) 651-3000
        Fax: (302) 651-3001

        - and -

        George N. Panagakis
        Jessica S. Kumar
        155 N. Wacker Dr.
        Chicago, Illinois 60606
        Telephone: (312) 407-0700
        Fax: (312) 407-0411

        Proposed Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of January 21, 2016, between Ryckman Creek Resources, LLC (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority excluding any taxes based on income or revenue.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11



# KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G. To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $10,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B. The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV. NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V. CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

## VI. SUSPENSION OF SERVICE AND TERMINATION

A. This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B. In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer. The Company agrees to pay for such services in accordance with KCC's then existing prices for such services. If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C. Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full. The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC. KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media. If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice. Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII. SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's negligence, fraud or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



# KCC AGREEMENT FOR SERVICES

X. FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI. INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII. NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA 90245
Attn: Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Ryckman Creek Resources, LLC
Three Riverway, Suite 1100
Houston, TX 77056
Attn: Robert Foss
Tel: (713) 974-5600
Fax: (713) 974-5601

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII. APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XIV. ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired

**EXHIBIT B**

**Gershbein Affidavit**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| RYCKMAN CREEK RESOURCES, LLC, et al., | : | Case No. 16-_____ (___) |
| | : | (Joint Administration Pending) |
| Debtors.[1] | : | |

**AFFIDAVIT OF EVAN GERSHBEIN IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF ORDER UNDER SECTION 156(C) OF TITLE 28 OF THE UNITED STATES CODE, BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY RULE 2002, AND LOCAL BANKRUPTCY RULE 2002-1(f) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE**

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury:

1. I am the Senior Vice President of Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("KCC"), whose offices are located at 2335 Alaska Avenue, El Segundo, California 90245, telephone number (310) 823-9000. The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

[1] The Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers, are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

2. This Affidavit is made in support of the Debtors' application for entry of an order, pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), appointing KCC as an official clams and noticing agent in the Debtors' chapter 11 cases (the "Application") effective as of the Petition Date and on the terms and conditions set forth in the Services Agreement attached to the Application as Exhibit A.[2]

3. As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the noticing and claims related services specified in the Application. In addition, at the Debtors' request, KCC will perform such other noticing, claims, technical, administrative, and support services specified in the Application.

4. KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases. Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest. Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules, and the provisions of any orders entered by this Court.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

5. KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims, and solicitation agent in many large bankruptcy cases in this District and other jurisdictions. See, e.g., In re Quicksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015); In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 3, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14010614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[3]

6. KCC represents, among other things, the following:

(a) KCC is not a creditor of the Debtors;

(b) KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

(c) By accepting employment in the Chapter 11 Cases, KCC waives any rights to receive compensation from the United States government as claims and noticing agent;

(d) In its capacity as the claims and noticing agent in the Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e) KCC will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in the Chapter 11 Cases;

[3] Because of the voluminous nature of the orders cited herein, they are not attached hereto. Copies of these orders, however, are available on request.

(f) In its capacity as claims and noticing agent in the Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(g) KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(h) None of the services provided by KCC as claims and noticing agent shall be at the expense of the Clerk's Office.

7. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors in matters unrelated to the Chapter 11 Cases, either as vendors or in cases where KCC serves in a neutral capacity as a bankruptcy claims and noticing agent or class action settlement administrator. KCC has not and will not represent the separate interests of any such creditor in these cases. To the best of my knowledge, neither KCC, nor any of its professional personnel, have any relationship with the Debtors that would impair KCC's ability to serve as claims and noticing agent or administrative agent. KCC has working relationships with certain of the professionals retained by the Debtors and other parties herein, but such relationships are completely unrelated to the Debtors' cases. In addition, KCC personnel may have relationships with some of the Debtors' creditors. Such relationships are, however, of a personal, financial nature and are wholly unrelated to the Debtors' cases. KCC has and will continue to represent clients in matters unrelated to the Debtors' cases and has had and will continue to have relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to these cases.

8. KCC is an indirect subsidiary of Computershare Limited. Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare Limited and its affiliates maintain do not create an

interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

9. To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of Bankruptcy Code section 101(14) as referred to in Bankruptcy Code section 327(a). KCC will supplement its disclosure to this Court if any facts or circumstances are discovered that would require disclosure.

10. In performing the services of notice and claims agent, KCC will charge the Debtors the rates set forth in the Services Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 29, 2016

By: ______________________
Evan Gershbein
Senior Vice President of Corporate Restructuring Services

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

Subscribed and sworn to before me on this 29th day of January, 2016, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

Signature ______________________
Commission # 2130730
My Comm. Expires 10/18/19

LETICIA SANCHEZ
Commission # 2130730
Notary Public - California
Los Angeles County
My Comm. Expires Oct 18, 2019

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| RYCKMAN CREEK RESOURCES, LLC, et al., | : | Case No. 16-10292 (___) |
| Debtors.[1] | : | Jointly Administered |

**ORDER GRANTING DEBTORS' APPLICATION FOR ENTRY OF ORDER UNDER SECTION 156(c) OF TITLE 28 OF THE UNITED STATES CODE, BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY RULE 2002, AND LOCAL BANKRUPTCY RULE 2002-1(f) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE**

Upon the application (the "Application")[2] of the Debtors for entry of an order (this "Order") under section 156(c) of title 28 of the United States Code, Bankruptcy Code section 105(a), Bankruptcy Rule 2002, and Local Bankruptcy Rule 2002-1(f), authorizing the Debtors to employ and retain Kurtzman Carson Consultants LLC ("KCC") as Claims and Noticing Agent nunc pro tunc to the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration; and upon the Gershbein Affidavit; and due and sufficient notice of the Application having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Application is in the best interests of the Debtors, their estates, their creditors, their stakeholders,

---

[1] The Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers, are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

and other parties in interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby,

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Application is GRANTED as set forth herein.

2. The Debtors are authorized to employ and retain KCC as Claims and Noticing Agent, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Application and the Services Agreement.

3. KCC is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in the Chapter 11 Cases, and all related tasks, in each case as described in the Application and the Services Agreement.

4. KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk's Office with a certified duplicate thereof upon the request of the Clerk's Office.

5. KCC is authorized to take such other action to comply with all duties set forth in the Application and the Services Agreement.

6. The Debtors are authorized to compensate KCC, subject to compliance with any order of this Court approving the Debtors' (i) entry into their postpetition financing and (ii) use of cash collateral (each a "Financing Order") and any budget approved thereunder (the "Budget"), in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or

otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7. KCC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices for services rendered by KCC in its capacity as Claims and Noticing Agent on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee appointed in these cases, counsel to the agent for the Debtors' prepetition secured lenders, and counsel to the agent for the Debtors' postpetition debtor-in-possession loan facility, and any party who specifically requests service of the monthly invoices.

8. Pursuant to Bankruptcy Code section 503(b)(1)(A), the fees and expenses of KCC under this Order shall be administrative expenses of the Debtors' estates.

9. KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter KCC may hold its retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

10. Notwithstanding any provision in the Services Agreement, the Debtors shall indemnify KCC solely to the extent set forth below:

(i) Subject to the provisions of subparagraphs (iii) and (iv) below, the Debtors shall indemnify KCC for any Losses arising from, related to, or in connection with their performance of the services described in the Services Agreement;

(ii) KCC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services to be provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

(iii) Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from that person's negligence, fraud, or willful misconduct; (b) for a contractual dispute in which the Debtors allege breach of KCC's contractual obligations under the Services Agreement unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination as to that person's negligence, fraud, or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order;

(iv) If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing the chapter 11 cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Indemnification Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (iv) is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC. All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement. For the avoidance of doubt, payment on account of any such indemnification, contribution, or reimbursement shall be subject to any Financing Order and the Budget.

11. Notwithstanding anything in the Services Agreement to the contrary, KCC's liability shall not be limited to (i) the total amount billed or billable to the Debtors for the portion of the particular work which gave rise to the loss or damage, nor (ii) the total amount

billed to the Debtors and paid to KCC for the services contemplated under the Services
Agreement.

12.     The parties shall meet and confer in an attempt to resolve any dispute
which may arise relating to the Services Agreement or monthly invoices, and the parties may
seek resolution of the matter from the Court if resolution is not achieved.

13.     In the event KCC is unable to provide the claims and noticing services set
forth in this Order, KCC will immediately notify the Clerk's Office and the Debtors' counsel and
cause to have all original proofs of claim and computer information turned over to another
claims and noticing agent with the advice and consent of the Clerk's Office and the Debtors'
counsel.

14.     The Debtors and the Claims and Noticing Agent are authorized to take all
actions necessary to effectuate the relief granted pursuant to this Order in accordance with the
Application.

15.     KCC shall not cease providing claims processing services during the
Chapter 11 Cases for any reason, including nonpayment, without an order of this Court;
provided, however, that KCC may seek such an order on expedited notice by filing a request
with the Court with notice of such request to be served on the Debtors, the Office of the United
States Trustee, counsel to the agent for the Debtors' postpetition debtor-in-possession loan
facility, and any official committee of creditors appointed in these cases by facsimile or
overnight delivery.

16.     Notwithstanding anything to the contrary contained herein, any payment
to be made or authorization contained hereunder shall be subject to the same limitations and
restrictions as are provided for under any Financing Order and the Budget.  To the extent there is

any conflict between this Order and any Financing Order or the Budget, the terms of such Financing Order or the Budget shall control.

17. In the event of any inconsistency between the Services Agreement, the Application, and the Order, this Order shall govern.

18. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

19. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware

__________________, 2016

____________________________________

UNITED STATES BANKRUPTCY JUDGE