## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :   Chapter 11
                                          :
RYCKMAN CREEK RESOURCES, LLC,             :   Case No. 16-10292 (KJC)
et al.,                                   :
                                          :   (Jointly Administered)
                      Debtors.¹           :
                                          :   Re: Docket No. 17
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**INTERIM ORDER (I) AUTHORIZING DEBTOR RYCKMAN CREEK RESOURCES,
LLC TO (A) OBTAIN POSTPETITION FINANCING ON A SECURED,
SUPERPRIORITY BASIS AND (B) USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV)
GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for interim and final orders, under

sections 105, 361, 362, 363, and 364, of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002 and 4001 of Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy

Rules") seeking, among other things:

(1) authority pursuant to Bankruptcy Code sections 363 and 364(c) and (d) to obtain an
interim debtor-in-possession secured financing (the "Bridge Facility") pursuant to the following
terms and agreements (collectively, the "Bridge Facility Documents"): (a) this Order, and any
final order entered by this Court approving the Bridge Facility (the "Final Order"), and (b) the
Ryckman Creek Resources, LLC Terms and Conditions of Proposed Senior Secured, Super-
Priority Debtor-in-Possession Bridge Facility Term Sheet, attached to the Motion as Exhibit A,
as amended, modified, and/or supplemented at or before the Final Hearing (as such term is
defined below) and there presented to this Court (the "Bridge Financing Term Sheet"),² with

---

¹ The Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers are as
follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC,
Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors'
corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

² Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bridge
Financing Term Sheet or the Motion, as applicable.

ING Capital LLC ("ING"), as agent and lender (the "DIP Agent" and the "Bridge Lender," respectively);

(2) the grant to the DIP Agent, for the benefit of itself and DIP Lender, of superpriority administrative claim status pursuant to Bankruptcy Code sections 364(c)(1) and 507(b) in accordance with the terms of this Order;

(3) authorization for the Debtors' use of cash collateral whenever or wherever acquired, and the proceeds of all collateral pledged to the Prepetition Lenders (defined below), as contemplated by Bankruptcy Code section 363 in accordance with the terms set forth herein;

(4) a grant of adequate protection to the Prepetition Lenders under and in connection with the Prepetition Loan Documents (as defined below) in accordance with the terms set forth herein;

(5) modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h); and

(6) a Final Hearing on the Motion for entry of an order authorizing the Bridge Facility and use of cash collateral on a final basis.

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "Notice") having been served by the Debtors in accordance with Rule 4001(c) on: (i) the counsel for the DIP Agent and the DIP Lender and counsel for the Prepetition Lenders; (ii) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors' estates; (iv) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against any of the Debtors, or who, to such Debtor's knowledge, have asserted any liens on any of such Debtor's assets; (vi) the Internal Revenue Service and all taxing authorities of states in which the Debtors are doing business; (vii) certain other parties identified in the certificates of service filed with this Court.

Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, this Court held an interim hearing with respect to the Motion on February 3, 2016 (the "Interim Hearing").

2

After the Motion and the proceedings before this Court at the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court as reflected on the record established by the Debtors at the Interim Hearing;

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      On February 2, 2016 (the "Petition Date"), the Debtors each commenced a case by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code;[4]

B.      The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108, and no trustee or examiner has been appointed;

C.      The Debtors gave notice of the Motion pursuant to Local Bankruptcy Rule 9013-1(m);

D.      This Court has core jurisdiction over the Debtors' bankruptcy cases, the Motion, and the parties and property affected by this Order pursuant to 28 U.S.C. §§ 157(b) and 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

E.      As of the date hereof, the United States Trustee has not yet appointed an official committee of unsecured creditors in this matter pursuant to Bankruptcy Code section 1102 (a "Statutory Committee");

F.      The Debtors have admitted, represented and stipulated, without prejudice to the rights of third parties or any Statutory Committee set forth in this Order, the following (collectively, the "Stipulations"):

---

[3]      To the extent, any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Fed. R. Bankr. P. 7052.

[4]      Unless otherwise noted, all statutory references are to the Bankruptcy Code.

(1)    as of the Petition Date, Ryckman was party to that certain Second Amended and Restated Credit Agreement dated as of October 31, 2014 (such agreement, as amended and existing immediately prior to the Petition Date, the "Second Amended and Restated Credit Agreement", and together with all other documents, instruments, and agreements delivered in connection with the Second Amended and Restated Credit Agreement, the "Prepetition Loan Documents") with ING as agent (in such capacity, the "Prepetition Agent") and ING and the other lenders party thereto, as lenders (in such capacity, the "Prepetition Lenders"),[5] pursuant to which (a) Ryckman was indebted to the Prepetition Lenders, without defense, counterclaim, recoupment, or offset of any kind, in the approximate non-contingent liquidated amount of no less than $310,000,000 as of February 1, 2016, plus prepetition interest, fees, expenses, and other amounts arising in respect of such obligations existing immediately prior to the Petition Date (such obligations, the "Prepetition Obligations"), and (b) such Prepetition Obligations were secured by valid, enforceable, properly perfected, first priority, and unavoidable liens on and security interests (the "Prepetition Liens") encumbering substantially all assets of Ryckman, as set forth in the Second Amended and Restated Credit Agreement and Prepetition Loan Documents (the "Prepetition Collateral");

(2)    the Bridge Lender is willing to provide postpetition financing to Ryckman through the Bridge Facility as set forth in the Bridge Financing Term Sheet;

(3)    the Prepetition Lenders consent to Ryckman's use of the Prepetition Collateral and cash collateral (as such term is defined in Bankruptcy Code section 363(a)) only upon the conditions contained in this Order and the Bridge Financing Term Sheet;

(4)    the Debtors possess no claims, offsets, or other rights, or causes of action against the Prepetition Lenders that would in any manner impair, reduce, or otherwise modify the Prepetition Obligations or the validly perfected Prepetition Liens upon the Prepetition Collateral;

(5)    the Prepetition Obligations constitute valid, binding obligations of the Debtors, enforceable in accordance with their terms, and the Debtors will not assert any claims, counterclaims, setoffs, or defenses of any kind or nature, which in any way would affect the validity and enforceability of any of the Prepetition Obligations and/or the Prepetition Liens of the Prepetition Lenders upon the Prepetition Collateral, or which would in any way reduce the obligation of the Debtors to pay in full all of the Prepetition Obligations; and

(6)    each Debtor is a duly organized, validly existing limited liability company or corporation and has the requisite power and authority to own, lease, and operate its property, including, without limitation, the DIP Collateral. Ryckman has the requisite power and authority to enter into, execute, deliver, and perform its obligations under the Bridge Financing Term Sheet and this Order and to incur the obligations provided for thereon. Except as may be explicitly required in the Bridge Financing Term Sheet, no

---

[5]    The Prepetition Lenders include the Completion Loan Lenders and the Term Loan Lenders, each as defined in the Motion.

consent or waiver of, filing with, authorization, approval or other action by any shareholder, any federal, state, or other governmental authority or regulatory body or any other person (other than the DIP Agent), which has not already been obtained or done, is required in connection with the execution, delivery, and performance by Ryckman of any of the documents required as a condition to the validity or enforceability of the Bridge Financing Term Sheet, other than entry by this Court of this Order;

G.       Based on the record at the Interim Hearing, the Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct its business;

H.       Based on the record at the Interim Hearing, the Debtors are unable to obtain secured credit on more favorable terms than under the terms and conditions provided in this Order;

I.        All cash of Ryckman, wherever located on the Petition Date, represents (i) proceeds of loans or other financial accommodations provided to Ryckman by the Prepetition Lenders under Prepetition Loan Documents; or (ii) proceeds of Prepetition Collateral. Such funds (the "Cash Collateral") constitute cash collateral within the meaning of Bankruptcy Code section 363;

J.        It is in the best interest of Debtors' estates that Ryckman be allowed to enter into the Bridge Facility in order to obtain postpetition secured financing from the Bridge Lender, and use the Prepetition Collateral and Cash Collateral subject to and in accordance with the terms of this Order and the Bridge Financing Term Sheet, and to grant adequate protection to the Prepetition Lenders on account of the Prepetition Obligations, on an interim basis under the terms and conditions set forth herein and in the Bridge Financing Term Sheet, as such is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing;

5

K.      The extension of credit and financial accommodations under the Bridge Financing Term Sheet are fair, reasonable, in good faith, negotiated at arm's length, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e);

L.      Ryckman requires access to the funding available under the Bridge Facility and the Bridge Financing Term Sheet in order to satisfy administrative expenses associated with the operation of its business as a going concern and other costs relating to the administration of the Chapter 11 Cases, and in order to avoid immediate and irreparable harm to the Debtors estates pending the Final Hearing;

M.      The Prepetition Lenders are unwilling to consent to use of the Prepetition Collateral by Ryckman, except as provided under the terms of the Bridge Financing Term Sheet and this Order assuring that the liens and the various claims, superpriority claims, and other protections granted in this Order will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the postpetition financing arrangement contemplated in the Bridge Financing Term Sheet and the use of Cash Collateral contemplated by this Order; and

N.      Good and sufficient cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief set forth in this Order, the Debtors and their estates will be immediately and irreparably harmed. Entry of this Order, consummation of the financing under the Bridge Facility and the use of Prepetition Collateral, including Cash Collateral, in accordance

with this Order and the Bridge Financing Term Sheet are in the best interests of the Debtors, their estates and their creditors.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is granted on an interim basis effective as of the Petition Date. Ryckman is authorized, pursuant to Bankruptcy Code sections 363 and 364, to enter into the Bridge Facility and the Bridge Financing Term Sheet, to execute such other and additional documents necessary or desired to implement the Bridge Facility or the Bridge Financing Term Sheet, to obtain postpetition secured financing from the Bridge Lender, and to use the Prepetition Collateral, Cash Collateral, and the proceeds and products thereof, pursuant to the terms and conditions of the Bridge Financing Term Sheet and this Order (with such changes, if any, as were made prior to or as a result of the Interim Hearing or are otherwise authorized to be made as amendments to the Bridge Financing Term Sheet in accordance with this Order) to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing. Ryckman shall use the advances obtained under the Bridge Facility and the DIP Collateral (including Cash Collateral) only for the purposes and in the amounts set forth in the Bridge Financing Term Sheet attached to the Motion as Exhibit A, the Initial Budget attached to the Motion as Exhibit B, and any Updated Budget. The Bridge Lender shall have no obligation to make Bridge Facility advances in excess of the amounts and times set forth in the Bridge Financing Term Sheet.

2.      In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized to perform all acts, to make, execute, and deliver all instruments, documents, and agreements (including, without limitation, the execution or recordation of security agreements, mortgages, deeds of trust, and financing statements), and to pay all fees that may reasonably be required or necessary for Ryckman to implement the terms of, perform its

7

obligations under or effectuate the purposes of and transactions contemplated by this Order or the Bridge Financing Term Sheet.

3.      Advances under the Bridge Facility shall be made incrementally, on a weekly basis, to service Ryckman's working capital needs as itemized in the Initial Budget or the Updated Budget, as applicable.

4.      No proceeds of the Bridge Facility or Cash Collateral shall be used to (a) permit the Debtors, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine (i) the validity, perfection, or priority of any security interests in favor of the Prepetition Lenders or the Bridge Lender, or (ii) the enforceability of the obligations of Ryckman or any other Debtor under the Second Amended and Restated Credit Agreement, any other Prepetition Loan Documents, or the Bridge Financing Term Sheet, (b) investigate, commence, prosecute, or defend any claim, motion, proceeding, or cause of action against the Prepetition Lenders or the Bridge Lender and their agents, attorneys, advisors, or representatives including, without limitation, any lender liability claims or subordination claims, (c) investigate, commence, prosecute, or defend any claim or proceeding or cause of action to disallow or challenge the obligations of Ryckman under the Second Amended and Restated Credit Agreement, any other Prepetition Loan Documents, or the Bridge Financing Term Sheet, or (d) fund acquisitions, capital expenditures, capital leases, or any other similar expenditure other than capital expenditures specifically set forth in the Initial Budget and approved by the DIP Agent.

5.      Pursuant to Bankruptcy Code sections 363 and 364(c) and (d), the Bridge Facility funds advanced pursuant to the terms of this Order and the Bridge Financing Term Sheet (collectively, the "Bridge Facility Advances") shall be allowed administrative expenses of the

8

Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Chapter 11 Cases and any superseding Chapter 7 cases including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 726, 1113, or 1114, (such claim, the "Bridge Superpriority Claim"). Notwithstanding the foregoing, the Bridge Superpriority Claim shall not be payable from the proceeds of or recoveries upon Avoidance Actions (as such term is defined below). The time of payment of the Bridge Facility Advances shall not be altered, extended, or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of this Court which hereafter may be entered.

6.     To the extent fully secured, interest on the Prepetition Obligations shall accrue from and after the Petition Date at the rate set forth in the Prepetition Loan Documents. The reasonable fees and expenses of the Bridge Lender shall be payable as set forth in the Bridge Financing Term Sheet without further notice, motion, or application to, order of, or hearing before this Court; provided, however, that on or before receiving payment of any such fees, costs, expenses, or other amounts payable pursuant to this paragraph, any party seeking payment of such amounts must first provide copies of invoices relating to such amounts to (i) the office of the U.S. Trustee; and (ii) if a Statutory Committee has been appointed, upon counsel for such committee. Such parties shall have ten (10) days following receipt of such invoices to object to the payment of such amounts, and following lapse of the objection period or resolution of such objections, if any, the Debtors shall promptly pay any amounts not subject to objection. If any such objection is not consensually resolved within ten (10) days after such objection is

interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Chapter 11 Cases.  Notwithstanding the foregoing two sentences, on or prior to the third (3rd) business day following the entry of this Interim Order, the Debtors shall pay accrued but unpaid fees of counsel to the Prepetition Agent through the date of this Interim Order (whether incurred before or after the Petition Date), provided, however, that promptly following entry of this Interim Order, the parties seeking payment of such amounts shall serve copies of invoices in accordance with the preceding two sentences, and any such amounts paid prior to the expiration of the objection deadline shall remain subject to appropriate remediation in the event that any objection to the payment of such amounts: (x) is made by parties receiving said invoices within ten (10)  days of receipt of such invoices; and (y) is upheld by this Court.

7. Pursuant to Bankruptcy Code sections 363, 364(c), and 364(d), as security for the Bridge Facility Advances and other postpetition costs payable under the Bridge Financing Term Sheet, Ryckman is hereby authorized to and is hereby deemed to grant to the DIP Agent a valid, binding, and enforceable lien, mortgage and/or security interest (a "Lien," and as so granted to the DIP Agent, the "DIP Lien") in all of Ryckman's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "DIP Collateral"), but excluding any causes of action that could be brought pursuant to sections 544, 545, 547, 548, 550, and 553, or any applicable state fraudulent transfer statutes, and all proceeds of or recoveries thereon (the "Avoidance Actions").

8. Pursuant to Bankruptcy Code sections 364(c) and (d), the DIP Lien shall be a first priority senior and priming lien, subject and junior only to (i) the Carve-Out (defined below) and

10

(ii) valid, enforceable, properly perfected, and unavoidable prepetition liens (including any liens that are perfected after the Petition Date with a priority that relates back to a date prior to the Petition Date as permitted under Bankruptcy Code section 546(b)) that are senior to the liens granted to Prepetition Lenders concurrently with the initial closing of the Second Amended and Restated Credit Agreement. The DIP Credit Lien shall not be subject or subordinate to any Lien which is avoided and which would otherwise be preserved for the benefit of Ryckman's estate under Bankruptcy Code section 551, and in no event shall any person or entity who pays (or causes to be paid) any of the obligations under the Prepetition Loan Documents be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred upon, the Bridge Lender by the terms of the Bridge Financing Term Sheet until such time as the obligations under the Bridge Financing Term Sheet and this Order are indefeasibly paid in full, in cash. The DIP Liens shall not be subject or subordinate to liens arising after the Petition Date, other than liens granted pursuant to this Order to the extent set forth in this Order.

9.     All rents, income, profits, cash in accounts and deposits derived from the Prepetition Collateral constitute Cash Collateral. Provided that each of the conditions set forth in this Paragraph are satisfied, Ryckman shall be authorized to use the Cash Collateral only in accordance with the terms of the Initial Budget (or the Updated Budget, as applicable), this Order, and the other Bridge Financing Term Sheet. The satisfaction of each of the following conditions shall constitute a condition to Ryckman's authorization to use any Cash Collateral: (i) no Event of Default under (and as defined in the Bridge Financing Term Sheet) shall exist or be continuing; and (ii) the Termination Date (as defined in the Bridge Financing Term Sheet) shall not have occurred. If, on any date, any of such conditions is not satisfied, then Ryckman shall

not be authorized to use any Cash Collateral unless and until such use is consented to by DIP Agent in its sole and absolute discretion. Absent further order of this Court, if the Termination Date occurs and after five (5) business days following delivery of the Default Notice (as hereinafter defined), Ryckman shall (a) remit to the DIP Agent, any Cash Collateral then in any Debtor's possession for application to the Bridge Facility obligations and Prepetition Obligations consistent with any applicable waterfall set forth in the Prepetition Loan Documents (as such waterfall may be modified by agreement among ING and the Prepetition Lenders) and (b) repay the aggregate principal amount of all advances outstanding under the Bridge Facility plus the sum of any accrued but unpaid interest and fees as of such Termination Date .

10.    Until the indefeasible payment in full of the Prepetition Obligations, the Prepetition Lenders are entitled to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) as a result of (a) the provisions of this Order granting first priority and/or priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the Bridge Lender, (b) Ryckman's use of the Prepetition Collateral (including Cash Collateral), (c) the imposition of the automatic stay pursuant to Bankruptcy Code section 362, or (d) otherwise, pursuant to Bankruptcy Code sections 361(a), 363(c), and 364(d)(1). The Prepetition Agent, on behalf of and for the benefit of the Prepetition Lenders, is hereby granted, solely to the extent of diminution in value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, the following:

A.    a Lien in all DIP Collateral (the "Adequate Protection Lien") junior only to the DIP Lien and the Carve-Out; and

B.    a postpetition superpriority administrative expense claim (the "Prepetition Adequate Protection Superpriority Claim") against the Debtors with recourse to all

prepetition and postpetition property of the Debtors and all proceeds thereof under Bankruptcy Code sections 503 and 507 against the Debtors' estates, in each case to the extent the Adequate Protection Lien does not adequately protect against the diminution in value of the Prepetition Liens, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors' or any of their respective estates and over all other administrative expenses of any kind, including, without limitation, those specified in Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, or 1114, or otherwise and including those resulting from the conversion of a Chapter 11 Case pursuant to Bankruptcy Code section 1112; subject and junior only to the Bridge Facility Advances, provided, however, that no Prepetition Adequate Protection Superpriority Claims shall be paid from Avoidance Actions or the proceeds thereof.

11.    Nothing herein shall be deemed to be a waiver by any Prepetition Lender of its right to request additional or further protection of its interests in any property of the Debtors, to move for relief from the automatic stay (if such relief is required), to seek the appointment of a trustee or examiner or the dismissal of any of the Debtors' bankruptcy cases, or to request any other relief.

12.    The automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit (a) Ryckman and the DIP Agent to implement and perform the Bridge Facility and the Bridge Financing Term Sheet, including without limitation the provisions thereof with respect to the collection of Proceeds, and the maintenance and implementation of the Collection Accounts and the Collection Procedures (as such terms are defined below), and (b) the creation and perfection of all liens granted or permitted by this Order. Ryckman and the

13

holders of any DIP Lien or Adequate Protection Lien shall not be required to enter into any additional security agreements to create, memorialize, and/or perfect any such Liens, or to file UCC financing statements, mortgages, or other instruments with any other filing authority or take any other action to perfect any such Liens, which shall be and are deemed valid, binding, enforceable, and automatically perfected by the docket entry of this Order by the Clerk of the Court. If, however, the holder of any DIP Lien or Adequate Protection Lien in its sole and absolute discretion shall elect for any reason to enter into, file, record, or serve any such financing statements or other documents with respect to any such Lien, then Ryckman shall execute same upon request and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time and on the date of the docket entry of this Order by the Clerk of the Court. The holders of any DIP Lien, Prepetition Lien, or Adequate Protection Lien are hereby relieved of any requirement to file proofs of claim in the Debtors' bankruptcy cases with respect to any such Liens and the claims secured thereby, but any such holder may in its sole and absolute discretion file any such proof of claim.

13.    The DIP Liens, Bridge Facility Superpriority Claims, Adequate Protection Liens and Prepetition Adequate Protection Superpriority Claims shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out," and all amounts payable in connection therewith, the "Carve-Out Amounts"):

A.    unpaid postpetition fees and expenses of the Clerk of the Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory interest rate.

B.    unpaid postpetition fees and expenses of professionals of the Debtors and professionals of a Statutory Committee (if any), which are retained by an order of the

Court pursuant to Bankruptcy Code sections 327, 328, 363, or 1103(a) (the "Professionals"), but only to the extent such fees and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Agent to Ryckman and the Statutory Committee (if any), (ii) within the total cumulative amounts set forth in the Initial Budget and the Updated Budgets, (iii) paid in accordance with compensation procedures approved by the bankruptcy court, and (iv) not otherwise paid from retainers, or any professional expense escrow account established by Ryckman; provided, however, that in no event shall the Carve-Out for the items set forth above exceed the amounts set forth for such items in the Initial Budget and the Updated Budgets.  Any amounts paid from the DIP Collateral or the proceeds thereof, or funded by the DIP Agent or the Bridge Lender with respect to the Carve-Out prior to the entry of the Final Order shall be Bridge Facility Advances and such obligations shall be secured by the DIP Lien.  Further, the payment of the fees or costs of any Professional and/or Statutory Committee (if any) shall be subject to Court approval, and the DIP Agent and the Bridge Lender reserve the right to object to any Professional's application for payment.

14.    Neither the payment of any Professional fees, nor the Carve-Out shall include payment for any fees and expenses, if any, of the Professionals incurred directly or indirectly, in respect of, arising from or relating to:

A.    the initiation, joinder, or prosecution of any action contesting the indebtedness owed to the DIP Agent, the Bridge Lender, the Prepetition Lenders, or the validity of any liens granted to any of such parties, provided, however, that a Statutory

Committee (if any) and its professionals shall be allowed up to $20,000 for purposes of investigating the validity of the Prepetition Liens;

      B.    preventing, hindering, or otherwise delaying, whether directly or indirectly, the exercise by DIP Agent of any of its rights and remedies under this Interim Order, the Final Order, or the Bridge Financing Term Sheet;

      C.    the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the DIP Agent or the Bridge Lender, Prepetition Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors, or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the DIP Agent, the Bridge Lender, or the Prepetition Lenders, or any of them, under Chapter 5 of the Bankruptcy Code;

      D.    any request to borrow money other than pursuant to the terms of the Interim Order, the Final Order, or the Bridge Financing Term Sheet;

      E.    with respect to the Debtors, any of the Debtors' Professionals, or any of their successors or assigns (including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code) performing or commencing any investigation or litigation (whether threatened or pending) by the Debtors with respect to any matter to be released, waived, or specified as not subject to challenge by the Debtors pursuant to this Order or the Final Order (including, without limitation Paragraph 25 herein).

    15.    Subject to the entry of the Final Order, effective as of the time of commencement of the Debtors' bankruptcy cases on the Petition Date:

16

A.      each Debtor waives irrevocably all claims and rights, if any, it or its estate might otherwise assert against the Prepetition Collateral or the DIP Collateral pursuant to Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

B.      no entity in the course of the Debtors' bankruptcy cases shall be permitted to recover from the DIP Collateral (whether directly or through the grant of derivative or equitable standing in the name of the any Debtor or such Debtor's estate) any cost or expense of preservation or disposition of the Prepetition Collateral or the DIP Collateral, including, without limitation, expenses and charges as provided in Bankruptcy Code sections 506(c), 105(a), or any other applicable law;

C.      no entity shall be permitted to recover from the DIP Collateral or the Prepetition Collateral, or assert against the Bridge Lender or any Prepetition Lender, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in the Initial Budget or the Updated Budget, as applicable; and

D.      the Prepetition Lenders and the Bridge Lender shall not be subject to the "equities of the case" exception of Bankruptcy Code section 552(b), or to the equitable doctrines of "marshaling" or any similar claim or doctrine, with respect to any DIP Collateral or the Prepetition Collateral.

16.      So long as the Bridge Facility obligations remain outstanding, unless consented to in writing by the DIP Agent, no Debtor shall seek entry of any further orders in its Chapter 11 Case which authorize (a) under Bankruptcy Code section 363, the use of Cash Collateral; (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code sections 364(c)

17

or 364(d) that does not repay the Bridge Facility in full, in cash, (c) the return of goods pursuant to Bankruptcy Code section 546(h) to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to Bankruptcy Code section 553 or otherwise, or (d) any other grant of rights against the Debtors and/or their respective estates that is secured by a Lien in the DIP Collateral or is entitled to superpriority administrative status that does not repay the Bridge Facility in full, in cash.

17.    Upon the occurrence of: (i) an Event of Default (as such term is defined in the Bridge Financing Term Sheet); (ii) any Debtor's failure to comply with the terms of this Order or the Final Order (including, without limitation, its failure to comply with the Initial Budget or the Updated Budget, as applicable); or (iii) Ryckman's failure to comply with any of the Milestones set forth in the Bridge Financing Term Sheet, and the giving of written notice thereof by the DIP Agent to counsel to the Debtors, the Statutory Committee (if any) and the U.S. Trustee (which notice may be given by any manner of electronic transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), then (1) the DIP Agent shall be fully authorized, in its sole discretion to cease making Bridge Facility advances to Ryckman, and (2) after the Remedy Notice Period, absent a Restraint on Remedies (each as defined below), (a) the DIP Agent shall be fully authorized, in its sole discretion to terminate Ryckman's use of the DIP Collateral (including, without limitation, Cash Collateral) pursuant to this Order and the Initial Budget or Updated Budget, as applicable, (b) the DIP Agent shall be fully authorized, in its sole discretion to immediately terminate the Bridge Facility and demand repayment of the Bridge Facility obligations then outstanding, and/or (c) the DIP Agent shall be fully authorized, in its sole discretion to exercise any other remedy set forth in the Bridge Financing Term Sheet.

18.     Further, upon the occurrence of an Event of Default and transmission of a Default Notice:

A.      the DIP Agent shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code or applicable law or rule (including, without limitation, Bankruptcy Rule 4001(a)), to take immediate reasonable action to protect the DIP Collateral from harm, theft, and/or dissipation;

B.      with respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Statutory Committee (if any), and the U.S. Trustee shall have five (5) business days from the date of the Default Notice (the "Remedy Notice Period") to obtain an order of this Court on notice to the DIP Agent (a) enjoining or restraining the Bridge Lender and/or the DIP Agent from taking action or exercising rights and remedies (other than as set forth in clause (1) of Paragraph 17 herein, which remedy may be exercised immediately upon the satisfaction of the conditions set forth in such paragraph) based upon the Event of Default specified in the Default Notice; or (b) challenging whether an Event of Default in the Default Notice has occurred or is continuing without cure (a "Restraint on Remedies").  During the Remedy Notice Period, the DIP Agent and the Bridge Lender shall refrain from exercising their rights and remedies (other than as set forth in clause (1) of Paragraph 17 herein, which remedy may be exercised immediately upon the satisfaction of the conditions set forth in such paragraph). Immediately upon expiration of the Remedy Notice Period unless a Restraint on Remedies has timely been obtained from this Court, or with respect to and upon the Maturity Date, immediately:

19

(1)    the DIP Agent shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code or Bankruptcy Rules (including, without limitation, Bankruptcy Rule 4001(a)), to exercise contractual, legal, and equitable rights and remedies as to all or such part of the DIP Collateral as it shall elect, and to apply the Proceeds (as such term is defined below) of the DIP Collateral to the repayment of the Bridge Facility obligations in accordance with the applicable waterfall (as such waterfall may be modified by agreement among ING and the Prepetition Lenders) set forth in the Prepetition Loan Documents; and

(2)    the DIP Agent, should it so elect in its sole and absolute discretion as exercised by the filing of an appropriate statement with this Court, shall be deemed to have been granted "peaceful possession" of, and right of access to, all or any portion of the DIP Collateral, by the Debtors.

19.    The Debtors shall provide the DIP Agent with (i) all financial statements, certificates, and reports required pursuant to the Bridge Financing Term Sheet in accordance with the timeframes specified therein and (ii) such additional information as the DIP Agent shall request from the Debtors. The DIP Agent and its representatives shall have reasonable access to each Debtor's business premises and to the DIP Collateral in order to review and evaluate the physical condition of any of the DIP Collateral and/or to inspect the financial records and other records of the Debtors concerning the operation of the Debtors' businesses.

20.    For purposes of this Order, (a) "Proceeds" shall mean both (i) proceeds (as defined in the Uniform Commercial Code for the State of New York) and (ii) any and all payments, proceeds, or other consideration realized upon the sale, liquidation, realization,

collection, or other manner of disposition of the DIP Collateral, whether in the ordinary course of any Debtor's business (including without limitation accounts, receivables, and other proceeds arising from the Debtors' sales of goods and/or performance of services) or other than in the ordinary course of any Debtor's business, and (b) "Disposition" shall mean any sale, liquidation, realization, collection, or other manner of disposition of DIP Collateral other than in the ordinary course of any Debtor's Business, including without limitation any sale authorized pursuant to Bankruptcy Code section 363.

21.    Ryckman shall maintain in full force and effect the deposit, clearing, dominion, lockbox, and similar accounts maintained by or on behalf of Ryckman pursuant to the Prepetition Loan Documents for the collection of Proceeds obtained in the ordinary course of Ryckman's business (the "Collection Accounts"), and the cash management systems, treasury management systems, and payment procedures under which such accounts and systems are administered (the "Collection Procedures").  In furtherance of the foregoing, the DIP Agent shall be deemed to have control of all of Ryckman's bank accounts (including, without limitation, all deposit accounts and blocked accounts), and any financial institutions in which such accounts of Ryckman are located are hereby ordered and directed to act in accordance with any request of the DIP Agent concerning such accounts, including, without limitation, requests to turnover funds therein without offset or deduction of any kind.

22.    The Debtors and any successors to the Debtors, including without limitation any successor trustee or trustees, shall assign or direct to the DIP Agent any and all Proceeds realized in any Disposition of any DIP Collateral and immediately deliver any and all such Proceeds which come into their possession to the DIP Agent in the form received; provided, however, that the foregoing shall be subject in all respects to the priorities of Liens with respect to the Liens

21

granted by or permitted under this Order. The foregoing is without prejudice to the rights of (a) the DIP Agent, the Statutory Committee (if any), or any other party to object to any proposed Disposition or (b) the rights of third parties set forth below with respect to a Challenge Action (defined below) and the remedies that may result from a successful Challenge Action. The DIP Agent and Prepetition Agent are hereby authorized to credit-bid all or any of the applicable obligations under the Bridge Facility and the Prepetition Loan Documents at any Disposition of any Prepetition Collateral and/or DIP Collateral, subject to the entry of the Final Order.

23.     All Proceeds retained by the DIP Agent shall be applied to the repayment of the Prepetition Obligations and Bridge Facility obligations, until such obligations are paid in full; provided, however, that the foregoing shall be subject in all respects to the priorities of Liens with respect to the Liens granted by or permitted under this Order. Such applications of Proceeds shall be free and clear of any claim, charge, assessment, or other liability.

24.     Subject to the right to bring a Challenge Action as set forth in Paragraph 26 below, upon entry of this Order:

A.     the Stipulations shall be binding upon the Debtors and all other persons, entities, and/or parties in all circumstances;

B.     the validity, extent, priority, perfection, enforceability, and non-avoidability of the Prepetition Lenders' respective, validly perfected prepetition claims and liens against the Debtors and the Prepetition Collateral shall not be subject to challenge by the Debtors or any other person, entity, or party; and

C.     neither the Debtors, nor any other person, entity, or party shall seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise)

22

any transfer made by or on behalf of the Debtors to or for the benefit of any of the Prepetition Lenders prior to the Petition Date.

25.    In consideration of and as a condition to the Bridge Lender making the Bridge Facility Advances and providing credit and other financial accommodations to the Debtors pursuant to the terms of this Order and the Bridge Financing Term Sheet, each Debtor (each a "Releasor" and collectively, the "Releasors"), subject to Paragraph 26 herein, absolutely releases, forever discharges and acquits each of the DIP Agent, the DIP Lender, and their respective successors and assigns, affiliates, officers, directors, employees, attorneys, and other representatives (the "Releasees") of and from any and all claims, demands, causes of action, damages, choses in action, and all other claims, counterclaims, defenses, setoff rights, and other liabilities whatsoever (the "Prepetition Released Claims") of every kind, name, nature, and description, whether known or unknown, both at law and equity (including, without limitation, any "lender liability" claims) that any Releasor may now or hereafter own, hold, have, or claim against each and every of the Releasees arising at any time prior to the entry of this Order (including, without limitation, claims relating to the Debtors, the Prepetition Loan Documents, and other documents executed in connection therewith, and the obligations thereunder); provided, however, that such release shall not be effective as to the Debtors' bankruptcy estates until the expiration of the Challenge Period.  In addition, upon the indefeasible payment, in full, in cash, of all Bridge Facility obligations owed to the Bridge Lender arising under this Order and the Bridge Financing Term Sheet, the Bridge Lender shall be released from any and all obligations, actions, duties, responsibilities, and causes of action arising or occurring in connection with or related to the Bridge Financing Term Sheet.

23

26.     Each Releasor hereby absolutely, unconditionally, and irrevocably covenants and agrees with each Releasee that it will not sue (at law, in equity, or in any other proceeding) any Releasee on the basis of any Prepetition Released Claims released and discharged by such Releasor pursuant to this Order.  If any Releasor violates this covenant, each Debtor agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all reasonable attorneys' fees and costs incurred by any Releasee as a result of such violation.

27.     Notwithstanding any other provisions of this Order, any interested party (other than the Debtors or their Professionals) in this case (including, without limitation, the Statutory Committee (if any)) shall have until (i) in the case of a party in interest with standing other than a Statutory Committee, 75 days after entry of this Interim Order, (ii) in the case of a Statutory Committee, 60 days after the filing of notice of appointment of the Statutory Committee  (the "Challenge Period"), to commence an adversary proceeding against the Prepetition Agent for the purpose (collectively, a "Challenge Action") of:

A.      challenging the validity, extent, priority, perfection, enforceability, and non-avoidability of the Prepetition Liens (as applicable) against the Debtors;

B.      seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Prepetition Lenders or the Prepetition Agent (as applicable) prior to the Petition Date;

C.      seeking damages or equitable relief against the Prepetition Lenders or the Prepetition Agent arising from or related to their prepetition business and lending relationships with the Debtors, including without limitation equitable subordination,

24

recharacterization, lender liability, and deepening insolvency claims and causes of action; or

        D.     challenging any other matter to be waived or released pursuant to this Order (including, without limitation, pursuant to Paragraph 25).

For the avoidance of doubt, in the event the cases are converted to Chapter 7 or a chapter 11 trustee is appointed prior to the expiration of the Challenge Period described in this Paragraph 27, the Challenge Period shall not expire until sixty (60) days after the trustee's appointment.

        28.     All parties in interest, including without limitation the Statutory Committee (if any), that fail to act in accordance with the time periods set forth in the preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge Action or challenging in any manner Prepetition Agent's Liens and shall be bound by the waivers, Stipulations, and terms set forth in this Order (including Paragraph 25 of this Order). Any Challenge Action filed shall prohibit application of this paragraph only to the extent of the specific matters set forth in such Challenge Action on the date of filing.

        29.     The legal and equitable claims, counterclaims, defenses, and/or rights of offset and setoff of the Prepetition Lenders in response to any such Challenge Action are reserved, and the ability of a party to commence a Challenge Action shall in no event revive, renew, or reinstate any applicable statute of limitations which may have expired prior to the date of commencement of such Challenge Action. Despite the commencement of a Challenge Action, the prepetition claims and Liens of the Prepetition Lenders shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under Bankruptcy Code section 502(d) and not subject to subordination under Bankruptcy Code section 510 until such time as a final and non-appealable judgment and order is entered sustaining such Challenge

Action in favor of the plaintiffs therein.    Notwithstanding anything to the contrary contained in this Interim Order, the Court expressly reserves the right to order other appropriate relief against Prepetition Lenders in the event there is a timely and successful Challenge Action by any party in interest to the validity, enforceability, extent, perfection or priority of the Prepetition Liens.

30.    In making decisions to advance any extensions of credit to Ryckman pursuant to the Bridge Facility or in taking any other actions reasonably related to this Order or the Bridge Financing Term Sheet (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Agent and the Bridge Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "control person," "responsible person," or other "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response Compensation and Liability Act, as amended, or any similar Federal or state statute), and the DIP Agent's and the Bridge Lender's relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Bridge Lender and the Debtors.

31.    This Order shall be binding upon and inure to the benefit of the DIP Agent, the Bridge Lender, the Prepetition Lenders, the Debtors, and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  Except as set forth herein with respect to a Challenge Action, no rights are created under this Order for the benefit of any creditor of the Debtors, any other party in interest

in the Debtors' bankruptcy cases, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

32.    Any order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the Bridge Lender's liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Bridge Facility obligations are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the Bridge Facility Superpriority Claim, the DIP Liens, the Adequate Protection Liens, and the Prepetition Adequate Protection Superpriority Claims.

33.    To the extent that any of the provisions of this Order shall conflict with any provisions of the Bridge Financing Term Sheet, or with any order of this Court authorizing the Debtors to continue the use of prepetition bank accounts, cash management systems, treasury management systems, or business forms, or any similar orders, this Order is deemed to control and supersede the conflicting provisions therein.

34.    The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rule 6004(h) or otherwise.    Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause.

35.    Nothing in this Order shall preclude this Court from entering a Final Order containing provisions inconsistent with or contrary to the provisions of this Order, provided, however, that the Bridge Lender and the Prepetition Lenders shall be entitled to the benefits and

protections of this Order, including (a) the adequate protection afforded to the Prepetition Lenders set forth in this Order, and (b) the protections afforded pursuant to Bankruptcy Code section 364(e), with respect to all loans, advances, and other financial, accommodations made by them pursuant to this Order. The DIP Lien, the priority afforded the Bridge Facility Advances, and the adequate protection afforded to the Prepetition Lenders, as set forth in this Order, shall be binding on the Debtors and any successor trustee or trustees even if this Order is reversed or modified on appeal with respect to all loans, advances, and other financial accommodations made by them pursuant to this Order. Except as provided herein, no Proceeds, or Cash Collateral may be used by any party in interest seeking to modify any of the rights granted to DIP Agent hereunder or in the Bridge Financing Term Sheet.

36.      Ryckman and the DIP Agent may implement non-material modifications of the Bridge Financing Term Sheet without the need for notice or further approval of this Court, provided, however, that copies of such amendments will be provided to the U.S. Trustee and the Statutory Committee (if any).    Ryckman and the DIP Agent may implement material modifications of the Bridge Financing Term Sheet on at least seven (7) calendar days prior notice to the Statutory Committee (if any) and the U.S. Trustee, and any proposed material modification that is objected to within such period shall only be implemented to the extent approved by this Court.

37.      The Debtors are authorized to do and perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtors' performance under this Order or the Bridge Financing Term Sheet, including, without limitation, (a) the execution of the Bridge Financing Term Sheet, (b) the payment of the fees and other expenses described herein or in the Bridge Financing Term Sheet

28

as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees, and facility fees.

38.     The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

39.     This Court shall retain jurisdiction to enforce the provisions of this Order, the Bridge Facility and the Bridge Financing Term Sheet, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order, the Bridge Facility and the Bridge Financing Term Sheet.

40.     This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize Ryckman to obtain credit on terms and conditions to which Ryckman and DIP Agent have agreed.  Thus, each of the terms and conditions constitutes a part of the authorization under Bankruptcy Code section 364, and is, therefore, subject to the protections contained in Bankruptcy Code section 364(e), regardless of (i) any stay, modification, amendment, vacation, or reversal of this Order or the Bridge Financing Term Sheet or any term hereunder or thereunder; (ii) the failure to obtain a final order pursuant to Bankruptcy Rule 4001(c)(2); or (iii) the dismissal or conversion of any of the Chapter 11 Cases.

41.    A final hearing with respect to the Motion is scheduled for March 1, 2016 at 10:00 a.m. (ET) (the "Final Hearing") before the Honorable Kevin J. Carey, United States Bankruptcy Judge.  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Bankruptcy Rule 2002 request for service. Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, and serve them on (i) the Debtors' proposed counsel, Skadden, Arps, Slate, Meagher & Flom LLP, attn:  George Panagakis and Jessica Kumar, 155 N. Wacker Drive, Chicago, IL 60606 and attn.:  Sarah E. Pierce, 920 N. King Street, Lbby 7, Wilmington, DE 19801; (ii) the Bridge Lender's counsel, Holland & Knight LLP, attn.:  Robert Jones and Brent McIlwain, 200 Crescent Court, Suite 1600, Dallas, TX 75201 and Bayard, P.A., attn.:  Neil B. Glasman and Justin R. Alberto, 222 Delaware Avenue, Suite 900, Wilmington, DE 19801; and (iii) the U.S. Trustee, attn.:  Richard L. Schepacarter, 844 N. King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 on or before 4:00 a.m./p.m. (prevailing Eastern time) on February 23, 2016.

Dated: Wilmington, Delaware
       February 3, 2016

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE