IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| **RYCKMAN CREEK RESOURCES, LLC,** *et al.*, | ) ) ) ) | Case No. 16-10292 (KJC) |
| | ) | Jointly Administered |
| Debtors.[1] | ) ) | |
| | ) | Re: D.I. 678 |

### OPINION[2]

Before the Court is the Debtors' Motion Requesting Determination of Tax Liability (the "Motion")[3] and the Creditor Uinta County's Objection to the Motion (the "Objection").[4] The Motion seeks an order determining the proper "Fair Market Value" upon which the 2015 and 2016 property tax liability of the Debtors should be computed. For the reasons set forth below, the Court will abstain from consideration of this matter.

### I. BACKGROUND

On February 2, 2016, Ryckman Creek Resources, LLC and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code.[5]

---

[1] The Debtors and, when applicable, the last four digits of their respective taxpayer identification numbers, are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.
[2] This Opinion constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).
[3] D.I. 678. In support of the Motion, the Debtors rely upon, and incorporate by reference, the Declaration of John W. Lammert (the "Lammert Declaration").
[4] D.I. 723.
[5] D.I. 1.

The Debtors continue to operate their business and manage their properties as debtors and debtors in possession under Bankruptcy Code sections 1107(a) and 1108.[6]

The Debtors operate an industrial facility for underground natural gas storage (the "Ryckman Creek Facility"), located in Uinta County, Wyoming.[7] The Debtors contend that Uinta County and associated governmental assessors (the "County") have improperly valued this property, resulting in an unjust property tax burden for the years 2015 and 2016. The County claims that the Debtors have a tax liability of $1,421,731.11 for 2015[8] and $1,586,629.00 for 2016.[9] Alternatively, the Debtors contend that the proper tax liability should be $419,385.33 for 2015[10] and $420,688.55 for 2016.[11] The cumulative difference between these claims is $2,168,286.23.[12]

---

[6] D.I. 678 at 2.
[7] *Id.* According to the Debtors, the Ryckman Creek Facility is a 50-billion cubic foot storage facility with a working gas capacity of approximately 42-billion cubic feet. *Id.* at 2-3.
[8] Exhibit C to the Motion. The 2015 claimed tax liability is based on the Uinta County Assessor's (the "Uinta Assessor," and together with the Uinta Treasurer, the "Taxing Authorities") 2015 Notice of Assessment (the "2015 Assessment") asserting a January 1, 2015 Fair Market Value for Ryckman's property of $193,511,560, identified as "oil & gas personal property" (the "Property"). That figure was subsequently changed to an asserted Fair Market Value of $197,546,890 (corresponding to a $22,717,892 assessed valuation).
[9] Exhibit E to the Motion. The 2016 claimed tax liability is based on the Uinta Assessor's 2016 Notice of Assessment (the "2016 Assessment," and, together with the 2015 Assessment, the "Assessments") asserting a January 1, 2016 Fair Market Value for the Property of $220,459,210.
[10] D.I. 678 at 3.
[11] *Id.* In support of this claim, the Debtors have submitted to the Court testimony and analysis from private assessors, and pointed to issues of misplaced numbers in the County's valuation. D.I. 678, Exhibits A, F, and G. At a hearing that took place on January 11, 2017, the Debtors argued that most of the issues for the Court to consider are as simple as the allegedly erroneous line item inclusion of the value of a facility that was destroyed by fire, and therefore had zero taxable value.
[12] The assessment and imposition of property taxes for 2017 has not been stayed by these bankruptcy proceedings, and a 2017 assessment will soon be issued by Uinta County, presumably causing a continuation of the dispute the Debtors ask this Court to consider.

The Debtors disputed the 2016 assessment by filing an appeal before the Uinta County Board of Equalization.[13] The Debtors did not appeal the 2015 assessment,[14] and have not made payments on their assessed tax liabilities for 2015 or 2016.[15]

At a hearing on January 11, 2017, the parties advised the Court that they were attempting to achieve a resolution through out-of-court discussions.[16] At a later hearing on March 27, 2017, the parties informed me that they had failed to arrive upon a satisfactory remedy, and I took this matter under advisement. For the reasons set forth herein, I will abstain from this dispute, and deny the Debtors' Motion.

## II. DISCUSSION

### The 2015 Assessment

As previously stated, the Debtors did not file an appeal or objection to the 2015 Assessment issued on March 16, 2015. Pursuant to Wyo. Stat. 39-13-109(b)(i), "[a]ny person wishing to contest an assessment of his property shall file [an appeal] not later than thirty (30) days after the date of the assessment…" Therefore, the time to file an appeal or objection to the 2015 Assessment expired on April 15, 2015.

However, the Debtors argue that Wyo. Stat. 39-13-109(c)(i) sets the filing deadline that should be applied here. That section states, "[w]ithin one (1) year following an illegal assessment, levy, or collection of taxes an action may be filed in district court to enjoin the illegal assessment,

---

[13] D.I. 574. On May 3, 2016, the County received A *Petition for Appeal Before the County Board of Equalization* (the "Appeal") dated May 11, 2016.
[14] D.I. 723, ¶ 11.
[15] D.I. 723, ¶ 18 and ¶ 45. Debtor consents to the appropriate application of interest on past-due tax payments. Motion, ¶ 36.
[16] D.I. 574.

3

levy or collection..." Here, the 2015 Assessment was final on August 17, 2015.[17] Therefore, the statute of limitations to file an action under Wyo. Stat. 39-13-109(c)(i) expired on August 16, 2016.

The Debtors filed the Motion seeking redress pursuant to 11 U.S.C. § 505(a) on October 7, 2016, well after the statute of limitations for the 2015 Assessment expired under either statute. Nevertheless, Section 11 U.S.C. § 505(a)(1) gives the Court broad authority to determine tax issues, providing:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[18]

However, paragraph (2)(C) states, "[t]he court may not so determine— ... the amount or legality of any amount arising in connection with an *ad valorem* tax on real or person property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired."[19] Since the applicable Wyoming statutes indicate that the period for contesting or redetermining the 2015 Assessment has expired, regardless of which filing deadline is applied, the Debtors' claim for reevaluation for the 2015 *ad valorem* taxes must be denied.

### The 2016 Assessment

The County requests that the Court abstain from deciding the section 505 claim and require the Debtors to seek redress at the state and local level because of the predominance of state law

---

[17] The Debtors maintain that the earliest applicable collection date after which the Debtors would be delinquent in paying their 2015 tax liabilities was November 11, 2015, and that is the date to begin the statute of limitations period. However, there is nothing in the Wyoming statutes to suggest that the statute of limitations begins to run on the earliest collection date.
[18] 11 U.S.C. § 505(a)(1).
[19] 11 U.S.C. § 505(a)(2)(C).

issues, as well as the need for uniformity of assessment.[20] Although this Court has jurisdiction to address the 2016 *ad valorem* taxes at issue here, I will exercise permissive abstention in determining this matter.

A federal court should exercise abstention sparingly.[21] Courts that have abstained in § 505 matters have generally done so if deciding the claim would require "a fact intensive review of the value of the property and the amount of the taxes in question," or if its decision "could affect the uniformity of assessment of ... taxes imposed on other taxpayers."[22]

Courts generally look to the following six factors to determine whether to exercise their authority to hear a tax issue under Bankruptcy Code section 505(a)(1): (i) complexity of the tax issue; (ii) need to administer the bankruptcy case in an orderly and efficient manner; (iii) whether adjudicating the issue will create a substantial burden on the court's docket; (iv) whether significant time is needed to reach a decision; (v) whether the debtor's asset and liability structure

---

[20] The Debtors argue that uniformity of assessment is not an issue here because there are no other similar properties to the Ryckman Creek Facility that would potentially need to undergo reevaluation if the Court deviated from the valuation of the County. However, the need for uniformity goes beyond the county in which the property is located. The County explained, "yes, this is a unique facility..., but to state that this would not affect conformity and uniformity of taxation in the state of Wyoming takes a position that is directly conflicting with the fact that our largest tax base for the state of Wyoming is our natural resources and the taxation on our natural resources. Specifically, in Uinta County alone there are 10 other industrial/commercial entities that are assessed and valued in the identical manner that Ryckman Creek is being assessed and that would be in front of this Court... The same cost approach is consistent with all other 22 Counties and is, in fact, how these have been recognized, that historical cost approach have been recognized by our Department of Revenue as the appropriate manner and mechanism for valuation." D.I. 841 at 26-27.

[21] *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

[22] *In re Indianapolis Downs, LLC*, 462 B.R. 104, 114–15 (Bankr. D. Del. 2011) (no abstention where "deciding the Tax Motion does not involve valuation at all, or anything beyond basic computation; rather, it requires the Court to interpret and apply the Indiana statutes at issue using traditional tools of statutory interpretation."); *In re ANC Rental*, 316 B.R. at 158–59 (Bankr. D. Del. 2004); *see In re AWB Assoc., G.P*, 144 B.R. 270, 276 (Bankr.E.D.Pa.1992) ("Abstention from deciding a tax adjudication question under [§ ] 505 is only appropriate under a showing that uniformity of assessment is of significant importance.").

warrants a ruling; and (vi) the potential to prejudice the debtor, taxing authorities, and creditors.[23] These factors weigh in favor of exercising permissive abstention for the following reasons.

*Complexity of the Tax Issue*

This tax issue is fairly complex. Determining the dispute in this case would require this Court to undertake a fact-intensive review of the value of the property and the amount of the taxes in question. Courts have abstained from hearing section 505 requests when the tax issue is fact intensive.[24]

Here, the Assessments of the Debtors' property were calculated based on the statutory definition of "fair market value," *i.e.* the amount of money a well-informed buyer would pay and a well-informed seller would accept for property that has been on the open market for a reasonable amount of time, assuming neither buyer nor seller is acting under pressure. The County claims that the "fair market value" applied to all of the Debtors' taxable property was conducted in accordance with the prescribed rules and regulations of the Wyoming Department of Revenue, Chapter y, Property Tax Vaulation Methodology and Assessment, as required by Wyo. Stat. 39-13-103(b)(ii). The Debtors challenge the methodology used to determine the value of the property at issue.[25] After the Debtors appealed the 2016 Assessment, they filed a memorandum to supplement the Appeal identifying two issues for review: (1) Are the assets valued by Uinta County taxable under

---

[23] *See Indianapolis Downs*, 462 B.R. at 114.
[24] *ANC Rental Corp.*, 316 B.R. at 159; *In re Beisel*, 195 B.R. 378, 380 (Bankr.S.D.Ohio, 1996).
[25] The County argues that the Debtors suggest mixing methodologies to include the Cost Approaches to Value, as well as the Market Approaches to Value. At the hearing on January 11, 2017, the Debtors claimed that they were not contesting the methodology used by the County, however, they argue that "using historical summation to get to cost [of the property] is wrong." D.I. 841 at 8. Although the Debtors claim not to dispute the methodology employed by the County, challenging the way that the County determined which property was included in its Assessments, and the value of that property, indicates a relatively high level of complexity.

Wyoming statutes; and (2) What is the value of the Taxable Assets for *ad valorem* tax purposes? The Debtors assert that improvements to the structure and property of the Debtors, and acquired assets of the Debtors, should not be "taxable" under Wyoming law.

The County objects to the Debtors' suggested method as inconsistent with the best practices in valuing assets of the industrial type and nature of the Ryckman Creek Facility. Although bankruptcy courts are routinely called upon to determine the value of a variety of types of property in many different locations, determining the appropriate method for assessing the Debtors' property, as well as reassessing the value of that property, are issues best decided under the local law applicable here by the local adjudicative bodies.

*Need to Administer the Bankruptcy Case in an Orderly and Efficient Manner*

These issues do not affect the Court's need to administer the bankruptcy case in an orderly and efficient manner because, as the Debtors concede, determination of the Debtors' Tax Liability is not a condition to confirmation of the Plan. This weighs neither in favor of nor against abstention.

*Whether Adjudicating the Issue will Create a Substantial Burden on the Court's Docket*

The District of Delaware has a comparatively heavy bankruptcy case load and, while I could find time to resolve this dispute, this factor also weighs in favor of abstention.

*Whether Significant Time is Needed to Reach a Decision*

The Debtors suggest that the evidence can be produced at a one-day hearing, or less, and that the Court can "streamline" presentation of the essential elements of each side's appraisal

methodology, reasoning, and conclusions. However, realistically, a significant amount of time could be necessary to present the evidence needed to assess the value of the Debtors' property. The Court would likely need to hear evidence describing the condition of the Debtors' assets, as well as the proper methodology of valuing those assets. Unlike other section 505 cases, the issue to be determined here is not simply whether the tax is due, but whether the County used the proper method for determining what tax is due. An evidentiary hearing will surely require both parties to present expert testimony to ascertain the fair market value of the assets. Therefore, this factor weighs heavily in favor of abstention.

*Whether the Debtor's Asset and Liability Structure Warrants a Ruling*

This case involves several Debtors with complex asset and liability structures. Such complexity weighs in favor of abstention.[26]

*The Potential to Prejudice the Debtor, Taxing Authorities, and Creditors*

The County contends that the forum provided by Wyoming law to afford the local tax authority, the Uinta County Board of Equalization, to address the appropriate assessment remains available to the Debtors.[27] Moreover, the County has demonstrated that there is an efficient process provided to facilitate review, and *de novo* consideration where appropriate (Wyo. Stat. 39-13-109(c)(i)) of the allegations asserted by the Debtors.[28] There is nothing to suggest that this Court

---

[26] *See ANC Rental Corp.*, 316 B.R. at 159.
[27] D.I. 723 at 28-29.
[28] At the hearing on January 11, 2017, the Debtors indicated that they may suffer prejudice if these issues are adjudicated by the local tax authority due to the structure of the government administration in Uinta County. Specifically, the Debtors argued, "it's a small government administration and the attorney who filed the papers saying why the assessment is correct, and should not be disturbed and that the appraisal was done correctly is the same Hearing Officer that will have to go before the Board of Equalization; one of three. Then the Wyoming courts give great deference, of course, to the Board of Equalization."

would provide a more optimal outcome for the Debtors. There is no potential prejudicial impact on the Debtors by allowing the local tax authority to handle this matter, but there may be prejudice imputed to the County if I exercise authority over these issues. This factor also weighs in favor of abstention. After consideration of all of the factors, I will exercise my discretion under Section 505(a)(1) and abstain from determining the disputed tax liability.

### III. CONCLUSION

For the reasons set forth above, the Debtors' Motion Requesting Determination of Tax Liability will be denied. An appropriate order is attached.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 10, 2017

---

D.I. 841 at 9-10. However, the County maintains that, "If there is a concern that somehow that's a prejudged determination as has been implied there [are] avenues for appeal from our Local Board both to the State Board and to the Wyoming Supreme Court." D.I. 841 at 36. I am confident that the Wyoming local and state courts will address the issues presented in a fair and impartial manner.