## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| RYCKMAN CREEK RESOURCES, LLC, et al., | : | Case No. 16-10292 (KJC) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors.[1] | : |  |
|  | : | **Hrg Date: June 29, 2017 at 10:00 a.m. (Eastern)** |
|  | : | **Obj. Due: June 27, 2017 at 12:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING (I) DISCLOSURE STATEMENT AND NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) HEARING DATE TO CONSIDER CONFIRMATION OF THE PLAN AND PROCEDURES FOR FILING OBJECTIONS THERETO, (III) CERTAIN DEADLINES RELATED TO SOLICITATION AND CONFIRMATION, (IV) SOLICITATION PROCEDURES FOR CONFIRMATION OF THE PLAN, (V) VOTING AND GENERAL TABULATION PROCEDURES, AND (VI) RIGHTS OFFERING PROCEDURES AND RELATED FORMS**

Ryckman Creek Resources, LLC ("<u>Ryckman</u>") and certain of its affiliates, the

debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>" or the

"<u>Company</u>"), hereby move (this "<u>Motion</u>") this Court for entry of an order under sections 105,

363, 503, 507, 1125, 1126, and 1128 of title 11 of the United States Code (the "<u>Bankruptcy

Code</u>"), Rules 2002, 3003, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure

(the "<u>Bankruptcy Rules</u>"), and Rule 3017-1 of the Local Rules for the United States Bankruptcy

Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), approving (i) the adequacy of

the *Disclosure Statement With Respect to the Third Amended Joint Chapter 11 Plan of*

---

[1] The Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers, are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

*Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors-in-Possession* [Docket No. 1027] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement")[2] filed in support of the *Third Amended Joint Chapter 11 Plan of Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors-in-Possession* [Docket No. 1028] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") and notice of the Disclosure Statement Hearing (as defined below); (ii) a hearing date to consider confirmation of the Plan and procedures for filing objections thereto; (iii) certain deadlines related to solicitation and confirmation; (iv) procedures for soliciting votes in support of confirmation of the Plan; (v) voting and general tabulation procedures; and (vi) rights offering procedures and related forms.  In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Debtors seek this Court's approval of (a) the adequacy of information in their Disclosure Statement under Bankruptcy Code section 1125(b) and (b) related solicitation procedures, so that they may begin soliciting votes on the Plan.  Additionally, as set forth below, the Debtors seek this Court's approval of a proposed schedule to allow the Debtors to pursue confirmation of the Plan consistent with the milestones set forth in the *Sixth Amendment to Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement and Security Agreement* [Docket No. 993] (the "DIP Milestones") and applicable bankruptcy law.

---

[2]     Capitalized terms not otherwise defined in this Motion have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

2.      Consistent with the Bankruptcy Code, the Bankruptcy Rules, and the

Local Bankruptcy Rules, the Debtors also seek this Court's approval of the following timeline to

pursue confirmation of the Plan in compliance with the DIP Milestones:

| DATE | EVENT |
|------|-------|
| June 29, 2017 | Voting Record Date |
| June 29, 2017 | Disclosure Statement Hearing |
| July 3, 2017 | Solicitation Mailing Deadline |
| July 12, 2017 | Deadline for Debtors to Object to Claims for Voting Purposes |
| July 20, 2017 | Rule 3018(a) Motion Deadline |
| July 20, 2017 | Plan Supplements Filing Deadline |
| July 27, 2017 | Voting Deadline |
| July 28, 2017 | Confirmation Objection Deadline |
| August 2, 2017 | Confirmation Hearing |

3.      The Plan contemplates two restructuring alternatives: (a) the sale of all of

the common equity in the Reorganized Debtors to the winning bidder in accordance with the

terms of the Bankruptcy Court–approved sale procedures and the distribution of the proceeds of

such transaction in accordance with the Plan (the "Sale Option"); or (b) a standalone

reorganization, including (i) the cancellation of common and preferred equity interests in the

Debtors; (ii) the restructuring of the Debtors' prepetition secured debt into common and

preferred equity; (iii) an exit facility (the "Exit Facility") to be provided in part by the Exit

Lenders, constituting the senior secured funded indebtedness of the Reorganized Debtors and

with an aggregate commitment amount of approximately $113 million consisting of loans in the

aggregate principal of approximately $53 million issued to the DIP Lenders in exchange for the

DIP Facility Claims and commitments to provide $[60] million of additional loans pursuant to a

rights offering (the "Rights Offering"); (iv) a Rights Offering to fund the remaining portion of

3

the Exit Facility; and (v) providing unsecured Creditors with the option to elect either a partial

cash recovery or certain value-sharing rights and certain new equity interests contributed by one

of the secured lenders (the "Lender Sponsor Option").

4.       Accordingly, this Motion also requests approval of certain procedures (the

"Rights Offering Procedures") and related materials (the "Rights Offering Materials"), each of

which is a key component of the Plan in the event the Debtors move forward with the Lender

Sponsor Option.

5.       As described in more detail in the Plan and the Disclosure Statement, the

Rights Offering consists of a distribution of subscription rights to Eligible Holders of Allowed

Claims entitled to receive distributions of New Common Units under the Plan for the

commitment of approximately $[60] million of Exit Facility Term Loans and Senior Convertible

Secured Loans on a ratable basis in proportion to the Allowed amount of each such Eligible

Holder's pro forma allocation of New Common Units as of the Rights Offering Record Date (as

defined in the Rights Offering Procedures).

6.       Because the Rights Offering is a necessary component of the Plan, this

Motion seeks approval of the Rights Offering Procedures and Rights Offering Materials, all as

attached to the Disclosure Statement Order as Exhibit 7, which will provide a streamlined and

efficient process (a) for Eligible Holders to make an eligibility certification and a determination

whether to subscribe to the Rights Offering concurrently with solicitation of votes on the Plan

and (b) for the Debtors to consummate the Rights Offering substantially concurrently with the

effectiveness of the Plan.  The Debtors believe that the Rights Offering Procedures are

reasonable and customary and provide all eligible holders a fair opportunity to participate in the

Rights Offering.

4

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8.     The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, 507, 1125, 1126, and 1128.  Such relief is also warranted under Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020 and Local Bankruptcy Rule 3017-1.

9.     Under Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

10.     On February 2, 2016 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases are jointly administered.

11.     The Debtors continue to operate their business and manage their properties as debtors and debtors in possession under Bankruptcy Code sections 1107(a) and 1108.

12.     On February 12, 2016, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") for the Chapter 11 Cases under Bankruptcy Code section 1102 [Docket No. 68].  No trustee or examiner has been appointed in the Chapter 11 Cases.

13.     On August 5, 2016, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors in Possession* [Docket No. 548] (the "Original Plan") and the *Modified Third Amended*

*Disclosure Statement with Respect to the Second Amended Joint Chapter 11 Plan of*

*Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors in*

*Possession* [Docket No. 549] (the "Original Disclosure Statement").

14.    On August 5, 2016, this Court entered an order[3] approving, among other

things, the adequacy of the Original Disclosure Statement and certain procedures for soliciting

votes on the Plan and the Debtors solicited votes on the Original Plan.  However, the Debtors did

not seek confirmation of the Original Plan, and have renegotiated the terms thereof with their

DIP Lenders.  The agreed-upon terms are embodied in the proposed Plan.

15.    Additional factual background information regarding the Debtors,

including their business operations, their corporate and capital structure, and the events leading

to the Chapter 11 Cases, is set forth in detail in the *Declaration of Robert D. Albergotti, the Vice*

*President of Restructuring of the Debtors, in Support of Chapter 11 Petitions and First Day*

*Pleadings* [Docket No. 20] and the Disclosure Statement.

## RELIEF REQUESTED

16.    By this Motion, the Debtors request, among other things, entry of an order

(the "Disclosure Statement Order"), in substantially the form attached hereto: (a) approving the

adequacy of the Disclosure Statement and notice of the Disclosure Statement Hearing; (b) setting

a hearing date to consider confirmation of the Plan (the "Confirmation Hearing") and approving

procedures for filing objections thereto ("Confirmation Objections"); (c) approving certain

---

[3]    *Order Approving (I) disclosure Statement and Notice of the Disclosure Statement Hearing, (II) Hearing Date to Consider confirmation of the Plan d and Procedures for Filing Objections to the Plan, (III) Solicitation Agent and Deadlines Related to Solicitation and Confirmation, (IV) Solicitation Procedures for Confirmation of the Plan, and (V) Voting and General Tabulation Procedures* [Docket No. 547] (the "Original Disclosure Statement Order").

deadlines related to solicitation and confirmation; (c) approving the solicitation procedures, substantially in the form attached as Exhibit 6 to the proposed Disclosure Statement Order (the "Solicitation Procedures"); (d) approving voting and general tabulation procedures; and (e) approving the Rights Offering Procedures and the Rights Offering Materials, all as attached to the Disclosure Statement Order as Exhibit 7, in connection with the Rights Offering to be consummated pursuant to the Lender Sponsor Option under the Plan.

**BASIS FOR RELIEF**

**I.      Approval of the Disclosure Statement and Notice of the Disclosure Statement Hearing**

**A.      The Disclosure Statement**

17.     Bankruptcy Code section 1125(b) prohibits postpetition solicitation of a reorganization or liquidation plan unless the plan proponents transmit the plan and "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information" to those persons whose votes are being solicited.  11 U.S.C. § 1125(b).  The Debtors filed their proposed Plan and related Disclosure Statement on May 25, 2017, and they seek to commence solicitation of acceptances of the Plan.

18.     The Debtors request that this Court approve the Disclosure Statement as providing adequate information within the meaning of Bankruptcy Code section 1125(a)(1). Bankruptcy Code section 1125 defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtors and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

Id. § 1125(a)(1).

19.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for or against the plan.  See Century Glove, Inc. v. First Am. Bank of N.Y., 860 F.2d 94, 100 (3rd Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003).

20.     The determination of whether the disclosure statement includes adequate information is made on a case-by-case basis, and courts exercise broad discretion when evaluating whether a disclosure statement contains adequate information.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); In re Lisanti Foods, Inc., 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of the disclosure statement."), aff'd, 241 F. App'x. 1 (3d Cir. Aug. 2, 2007).  This discretion provides flexibility and facilitates the effective reorganization of chapter 11 debtors by accommodating the variations among chapter 11 cases. See H.R. Rep. No. 95-595, at 408-10 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6186-87; see also In re A.H. Robins Co., Inc., 880 F.2d 694, 696-97 (4th Cir. 1989).  This determination should take account of the expertise and resources, including outside advisors and relevant information already possessed or publicly available, of the hypothetical investor in each class of claims or interests from which acceptance or rejection of the plan is solicited.  See In re Zenith Elecs. Corp., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

21.     In making a determination as to whether a disclosure statement contains adequate information as required by Bankruptcy Code section 1125, courts typically look for disclosures related to topics such as:

8

(i)     the events which led to the filing of a bankruptcy petition;

(ii)    the relationship of a debtor with its affiliates;

(iii)   a description of the available assets and their value;

(iv)    the anticipated future of the companies;

(v)     the source of information stated in the disclosure statement;

(vi)    the present condition of the debtors while in chapter 11;

(vii)   claims asserted against the debtors;

(viii)  the estimated return to creditors under a chapter 7 liquidation;

(ix)    the chapter 11 plan or a summary thereof;

(x)     financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

(xi)    information relevant to the risks posed to creditors under the plan;

(xii)   the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

(xiii)  litigation likely to arise in a non-bankruptcy context; and

(xiv)   tax attributes of the debtors.

See In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996); see also In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (setting forth a non-exhaustive list of 19 categories of information that may be included in a disclosure statement). Disclosure regarding all of the aforementioned topics is not necessary in every case. See, e.g., U.S. Brass, 194 B.R. at 425.

22.     The Debtors submit that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125. The Disclosure Statement is

both extensive and comprehensive and addresses the information set forth above in a manner that provides Holders of Claims entitled to vote to accept or reject the Plan with "adequate information." Indeed, the Disclosure Statement contains descriptions and summaries of, among other things:[4]

(i) the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests and the anticipated range of recoveries for each Class;

(ii) the Debtors' history and prepetition capital structure;

(iii) certain events leading to the commencement of the Chapter 11 Cases;

(iv) the significant events during the Chapter 11 Cases;

(v) the claims asserted against the Debtors' estates;

(vi) the treatment of Executory Contracts and Unexpired Leases under the Plan;

(vii) the provisions governing distributions under the Plan;

(viii) the means for implementation of the Plan;

(ix) securities to be issued under the Plan;

(x) the settlement, release, injunctive relief, and exculpation provisions of the Plan;

(xi) financial projections and other information and considerations relevant to creditors' determinations of whether to accept or reject the Plan;

(xii) various risk factors affecting the Plan and the Debtors' restructuring;

(xiii) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case;

(xiv) certain tax law consequences of the Plan; and

---

[4] To the extent any of the below information is not already included, such information will be provided prior to the Disclosure Statement Hearing.

(xv)    a disclaimer indicating that no statements or information concerning the Debtors and their assets and securities are authorized other than those set forth in the Disclosure Statement.

23.    In light of the foregoing, the Debtors submit that the Disclosure Statement contains "adequate information" as that phrase is defined in Bankruptcy Code section 1125. Accordingly, the Debtors request that the Disclosure Statement be approved.

24.    The Debtors further request that this Court authorize them, in their discretion, to (a) make non-material changes to the Disclosure Statement and related documents (including the exhibits thereto) and (b) revise the Disclosure Statement and related documents (including the exhibits thereto) to add further disclosure concerning events occurring at or after the filing of this Motion, before distributing it to each person and entity in accordance with the terms of the proposed Disclosure Statement Order, but before distributing Solicitation Packages (as defined herein).

**B.    Notice of Disclosure Statement Hearing**

25.    Bankruptcy Rule 3017(a) provides that, prior to a proposed disclosure statement being approved, service of such disclosure statement shall be made upon the United States Trustee, any statutorily appointed committee, the Securities and Exchange Commission ("SEC"), and those parties in interest that have made a written request for such service. See Fed. R. Bankr. P. 3017(a).  In accordance with Bankruptcy Rule 3017(a), the Debtors have served or will serve copies of this Motion, the Disclosure Statement, and the Plan on: (a) the United States Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the agent for the Debtors' prepetition and postpetition secured lenders; (d) the SEC; and (e) all parties entitled to notice under Bankruptcy Rule 2002.

26.    Although Bankruptcy Rule 3017(a) only requires that a proposed disclosure statement be served upon the parties set forth above, under Bankruptcy Rule 2002(b), all creditors, equity security holders, and other parties in interest must be provided with not less than 28 days' notice by mail of the time fixed for filing objections to, and the hearing to consider approval of, the proposed disclosure statement (the "Disclosure Statement Hearing").  See id. 2002(b).

27.    Accordingly, in compliance with Bankruptcy Rules 3017(a) and 2002(b), with the assistance of the Solicitation Agent (as defined herein), on May 30, 2017, the Debtors filed and mailed a notice (the "Disclosure Statement Hearing Notice") to: (a) the United States Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the agent for the Debtors' prepetition and postpetition secured lenders; (d) the SEC; (e) all parties entitled to notice under Bankruptcy Rule 2002; (f) any party with a filed proof of claim; and (f) all of the Debtors' known creditors and equity holders.

28.    The Disclosure Statement Hearing Notice provides notice of, among other things, the following: (a) the filing of the Plan and the Disclosure Statement; (b) the deadline and procedures for filing objections to approval of the Disclosure Statement; (c) the time, date, and place of the Disclosure Statement Hearing; and (d) instructions for obtaining copies of the Plan and Disclosure Statement.  The foregoing service provided parties in interest with no fewer than 28 days' notice of the time fixed for filing objections, which shall be June 27, 2017, at 4:00 p.m. (Eastern) (the "Disclosure Statement Objection Deadline") and the Disclosure Statement Hearing.

29.    Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice."  Id. 2002(1).  Thus, in addition to the foregoing service of the Disclosure Statement Hearing Notice

providing known creditors with actual notice of the Disclosure Statement Hearing, the Debtors also published the Disclosure Statement Hearing Notice (in a format modified for publication) in the: (a) <u>Houston Chronicle</u>; (b) <u>Salt Lake Tribune</u>; and (c) either the <u>Uinta County Herald</u> or the <u>Wyoming Tribune Eagle</u>.  The Debtors believe that publication of the Disclosure Statement Hearing Notice provided sufficient notice of the deadline for filing objections to the approval of the Disclosure Statement, the Disclosure Statement Hearing, and other relevant deadlines to unknown creditors and other parties that may not otherwise receive actual notice by mail.

30.     Accordingly, the Debtors submit that the above notice procedures provide adequate notice of the Disclosure Statement Hearing and, therefore, request that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

## II.     Confirmation Hearing and Notice and Objection Procedures Related Thereto

## A.     Confirmation Hearing Date

31.     Bankruptcy Code section 1128 provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a plan.  Fed. R. Bankr. P. 3017(c).  The Debtors request that the Confirmation Hearing be scheduled for August 2, 2017, at 1:00 p.m. (Eastern) (the "<u>Confirmation Hearing Date</u>"),[5] to be continued upon request of the Debtors or otherwise at this Court's direction, either by notice or by announcing the continuance in open court without further notice.  This date will be approximately 28 days after the Solicitation Mailing Deadline (as defined herein) and

---

[5]     The Debtors have previously conferred with the clerk of the Court and established this date and time as an omnibus hearing date in the Chapter 11 Cases [Docket No. 994].

approximately 6 days after the Voting Deadline (as defined herein).  The Debtors submit that the

proposed Confirmation Hearing Date complies with the Bankruptcy Code, the Bankruptcy Rules,

and the Local Bankruptcy Rules and will enable the Debtors to pursue confirmation of the Plan

in a timely fashion.

**B.    Confirmation Hearing Notice**

32.    To provide notice of the Confirmation Hearing Date to creditors and

parties in interest, the Debtors propose to serve the form of notice attached to the Disclosure

Statement Order as Exhibit 1 (the "Confirmation Hearing Notice").  Bankruptcy Rules 2002(b),

(d), and 3017(a) require no less than 28 days' notice to all Holders of Claims or Interests of the

time fixed for filing objections to and the hearing on confirmation of a chapter 11 plan.  To

satisfy this requirement, the Debtors intend to send the Confirmation Hearing Notice upon

approval of the Disclosure Statement such that it will be served at least 28 days prior to the

Confirmation Hearing.

33.    Further, in accordance with Bankruptcy Rules 2002 and 3017(d), the

Confirmation Hearing Notice provides notice of, among other things: (a) approval of the

Disclosure Statement; (b) the Confirmation Hearing Date; (c) the deadline and procedures for

filing Confirmation Objections; (d) the treatment of certain Disputed Claims (as defined herein),

including the deadline by which the Debtors must file objections to claims so as to render such

claims Disputed Claims that are temporarily disallowed for voting purposes; (e) the deadline and

procedures for filing Rule 3018(a) Motions (as defined herein); (f) the Record Date (as defined

herein); (g) the Voting Deadline (as defined herein) for receipt of Ballots (as defined herein); and

(h) the proposed releases, injunctions, and exculpations under the Plan.

34.     The Debtors respectfully request that the Court find that the Confirmation Hearing Notice complies with the requirements of Bankruptcy Rule 2002(b), (c)(3), and (d), and Bankruptcy Rule 3017(a).  The Debtors further request that this Court determine that the Confirmation Hearing Notice contains sufficient disclosure regarding the discharge, third-party release, exculpation, and injunction language in Article X of the Plan.

35.     In addition, Bankruptcy Rule 2002(l) permits this Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." Fed. R. Bankr. P. 2002(l).  The Debtors propose to publish the Confirmation Hearing Notice one time in each of the following publications in order to provide notification to those entities who may not receive notice by mail: the (a) Houston Chronicle; (b) Salt Lake Tribune; and (c) either the Uinta County Herald or the Wyoming Tribune Eagle.[6]  The Debtors believe that publication of this notice will give sufficient notice of the Confirmation Hearing and the Confirmation Objection Deadline to persons and entities which do not otherwise receive notice by mail as provided for in the Disclosure Statement Order.

36.     The Debtors request that this Court approve the Confirmation Hearing Notice in substantially the form attached to the Disclosure Statement Order as Exhibit 1.

**C.     Confirmation Objection Deadline and Procedures**

37.     Bankruptcy Rule 3020(b)(1) authorizes this Court to fix a time for filing objections to the Plan.  Under this rule, the Debtors request that this Court set July 28, 2017, at 4:00 p.m. (Eastern) (the "Confirmation Objection Deadline") as the last date and time for filing

---

[6]     The Debtors will endeavor to publish the Confirmation Hearing Notice in each of these publications prior to the Solicitation Mailing Deadline.  Certain publications, however, publish only once per week or may require longer advance notice.  Accordingly, in certain cases, publication may occur after the Solicitation Mailing Deadline.

and serving Confirmation Objections.  The Debtors request that this Court consider only timely

filed and served Confirmation Objections, and that Confirmation Objections not timely filed and

served in accordance with the provisions of the immediately following paragraph be overruled.

          38.     The Debtors further request that this Court direct that Confirmation

Objections, if any, must

(i)      be in writing;

(ii)     comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules;

(iii)    set forth the name and address of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, their estates, or their property;

(iv)    state with particularity the legal and factual bases for the objection;

(v)     be filed with the Bankruptcy Court together with proof of service; and

(vi)    be served by personal service, overnight delivery, or first-class mail, so as to be received no later than the Confirmation Objection Deadline, by the following: (a) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, 920 N. King Street, Wilmington, DE 19801, Attn: Robert A. Weber, Esq. and 155 N. Wacker Dr., Chicago, IL 60606, Attn: Tabitha J. Atkin, Esq.; (b) counsel to the Creditors' Committee, Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801, Attn: Dennis A. Meloro, Esq., 1000 Louisiana Street, Suite 1700, Houston TX 77002, Attn: Shari L. Heyen, Esq., and Terminus 200, 3333 Piedmont Road NE, Suite 2500, Atlanta, GA 30305, Attn: David B. Kurzweil, Esq.; (c) counsel to the agent for the Debtors' prepetition secured lenders and the agent for the Debtors' postpetition secured lenders, Holland & Knight LLP, 200 Crescent Court, Suite 1600, Dallas, TX 75201, Attn: Robert Jones, Esq. and Brent McIlwain, Esq. and Bayard, P.A., 222 Delaware Avenue, Suite 900, Wilmington, DE 19899, Attn: Neil Glassman, Esq.; and (d) the United States Trustee, J. Caleb Boggs Federal Bldg., 844 North King Street, Room 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter, Esq. (collectively, the "Notice Parties").

III.    **Approval of Deadlines Related to Solicitation**

           39.     Pursuant to the Original Disclosure Statement Order, this Court authorized Kurtzman Carson Consultants LLC ("KCC" or the "Solicitation Agent") to serve as the Debtors' solicitation and noticing agent to assist the Debtors in mailing Solicitation Packages and notices, receiving and tabulating Ballots cast on the Plan, and certifying to the Court the results of balloting.  See Original Disclosure Statement Order ¶ 10.  Consistent with that order, the Debtors believe that KCC is authorized to continue to act as the Solicitation Agent.

A.    **Solicitation Mailing Deadline**

           40.     Through the Solicitation Agent, the Debtors intend to distribute the Confirmation Hearing Notice on June 30, 2017 (the "Confirmation Hearing Notice Mailing Deadline"), in a manner consistent with applicable service requirements, upon entry of the Disclosure Statement Order, if the Disclosure Statement Order is entered on the date of hearing. The Debtors intend to distribute copies of the Solicitation Package on or before July 3, 2017 (the "Solicitation Mailing Deadline"), approximately four days after of entry of the Disclosure Statement Order, if the Disclosure Statement Order is entered on the date of the Disclosure Statement Hearing.  The Debtors submit that distribution of copies of the Confirmation Hearing Notice and Solicitation Package in this manner will provide the requisite materials to Holders of Claims entitled to vote on the Plan in compliance with Bankruptcy Rules 3017(d) and 2002(b) while allowing the Solicitation Agent sufficient time to compile the Solicitation Packages.  See Fed. R. Bankr. P. 3017(d) (providing that after approval of a disclosure statement, a debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed and any other information that the court

may require); see also id. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the confirmation of a chapter 11 plan).

**B.     Voting Record Date**

41.     The Debtors request that this Court exercise its authority under Bankruptcy Rule 3018(a) to fix June 29, 2017, as the record date (the "Voting Record Date") for determining (a) Creditors and Interest Holders entitled to receive Solicitation Packages and other notices, (b) Creditors entitled to vote to accept or reject the Plan, and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim.[7] This date falls in the window after the Bar Date and prior to mailing of Solicitation Packages and accordingly is a reasonable time for determining Creditors entitled to receive notices and to vote.  For clarity, and to ensure there is no confusion as a result of last-minute claims trading activity, the Debtors request that this Court order that the proper Holder of a docketed proof of claim or scheduled claim be determined by reference to the Solicitation Agent's claims register, as may be modified by a notice of transfer filed and reflected on this Court's official docket (ECF), at 11:59 p.m. (Eastern) on June 29, 2017, and that only those registered Holders of Claims as reflected on the docket together with the Solicitation Agent's database on the Voting Record Date be entitled to vote.  The Holders of any Claims filed after the Voting Record Date would not be entitled to vote.

42.     Likewise, the transferees of any Claims for which a notice of transfer has been filed after the Voting Record Date would likewise not be entitled to vote.  In particular, for

---

[7]     The Debtors' request for the establishment of a Voting Record Date is for voting purposes only and shall have no impact with respect to who is entitled to receive distributions under the Plan, which shall be governed by the terms of the Plan.

purposes of the Voting Record Date, no transfer of a Claim pursuant to Bankruptcy Rule 3001 shall be recognized unless: (a) documentation evidencing such transfer was filed with the Court on or before 21 days prior to the Voting Record Date and (b) no timely objection with respect to such transfer was filed by the transferor.

**C.**     **Voting Deadline**

43.     Bankruptcy Rule 3017(c) requires this Court to fix a time within which Holders of Claims and Interests who are entitled to vote may vote to accept or reject the Plan. Accordingly, the Debtors request that this Court set July 27, 2017, at 4:00 p.m. (Pacific) (the "Voting Deadline") as the last date and time by which Ballots for accepting or rejecting the Plan must be received by the Solicitation Agent to be counted.  The Debtors propose that to be counted, Ballots must be returned to and received by the Solicitation Agent on or before the Voting Deadline by (a) mail, (b) overnight delivery, or (c) hand delivery, and otherwise in accordance with the Solicitation Procedures set forth herein.

**IV.**     **Approval of Solicitation Procedures**

44.     To solicit acceptances or rejections of the Plan, the Debtors seek approval of the Solicitation Procedures.  The Solicitation Procedures will allow the Debtors to distribute solicitation materials and tabulate votes to accept or reject the Plan effectively and consistently with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Furthermore, the Solicitation Procedures, in conjunction with the Debtors' proposed Disclosure Statement Hearing Notice and Confirmation Hearing Notice, provide adequate notice to all Holders of Claims regarding the solicitation process and the relevant dates associated therewith.

**A.      Content and General Transmittal of Solicitation Package**

45.    Under Bankruptcy Rule 3017, the Debtors propose to transmit or cause to be transmitted on or before the Solicitation Mailing Deadline, to the persons listed below, subject to the limitations contained therein and elsewhere in this Motion, by United States mail, first-class postage prepaid, or by hand or by overnight courier, a solicitation package (the "Solicitation Package") containing a copy of:

- the Confirmation Hearing Notice;

- the appropriate Ballot as set forth herein, customized for the specific creditor, with appropriate voting instructions, in substantially the forms attached to the Disclosure Statement Order as Exhibits 2-A through 2-D (as may be modified for particular classes and with instructions attached thereto), and a pre-addressed postage prepaid return envelope;

- a CD-ROM containing the Disclosure Statement Order (without exhibits attached), the Disclosure Statement (to which the Plan is appended), and any other publicly filed materials appended thereto; and

- any supplemental solicitation materials that the Debtors may file with the Court.

The Debtors propose that the Solicitation Package will be sent to: (a) the United States Trustee; (b) the Internal Revenue Service; and (c) creditors holding Claims in a Class designated as Impaired and entitled to vote on the Plan (provided, however, that the United States Trustee and Internal Revenue Service will only receive ballots if they would otherwise qualify to vote in respect of the Plan).  The Debtors will also send the Solicitation Package (without Ballots) to (a) counsel to the Creditors' Committee and (b) counsel to the agent for the Debtors' prepetition and postpetition secured lenders.

**B.      Ballots**

46.    Bankruptcy Rule 3018(c) provides that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity

security holder or an authorized agent, and conform to the appropriate Official Form." See Fed.

R. Bankr. P. 3018(c).  Additionally, pursuant to Bankruptcy Rule 3017(d), a debtor must mail a

form of ballot conforming to the appropriate Official Form to creditors and equity security

holders entitled to vote on the plan.  See id. 3017(d).

   47. In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared

and will customize Ballots for Holders of Claims, substantially in the forms of the ballot attached

as Exhibit 2-A through 2-D to the Disclosure Statement Order (the "Ballots"),[8] to tabulate

acceptances and rejections of the Plan.  The forms of the Ballots are based on Official Form 314

and have been modified to: (a) address the particular circumstances of this case and (b) include

certain additional information that the Debtors believe to be relevant and appropriate for each

Class of Claims entitled to vote on the Plan.  Pursuant to the Solicitation Procedures, the

Solicitation Agent will distribute the appropriate Ballots to Holders of Claims in each subclass of

Class 3 – Prepetition Credit Agreement Claims and Hedging Agreement Claims and Class 5 –

General Unsecured Claims (collectively, the "Voting Classes") in accordance with the

requirements of Bankruptcy Rule 3017(d).

   48. All other Classes are either (a) conclusively presumed to have accepted

the Plan pursuant to section 1126(f) of the Bankruptcy Code because they are unimpaired or (b)

deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g) because no

distributions will be made on account of Claims or Interests in such Classes.  Thus, Holders of

Claims and Interests in these non-voting Classes will receive the applicable notice of non-voting

status in lieu of the Solicitation Package, as discussed below.

---

[8] Prior to mailing, the Debtors will fill in the appropriate Voting Class and Claim on the Ballot.

49.     The Debtors submit that the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C.     Unclassified Claims and Unimpaired Creditors**

50.     In compliance with Bankruptcy Code section 1123(a)(1) and as reflected in Article II of the Plan, Administrative Claims, DIP Facility Claims, Professional Claims, and Priority Tax Claims are not classified under the Plan (collectively, the "Unclassified Claims"). See 11 U.S.C. §1123(a)(1) (providing for classification of claims other than administrative and priority tax claims).  As such, Holders of Unclassified Claims are not entitled to vote on the Plan.

51.     Under the Plan, certain Classes of Claims are unimpaired as defined in Bankruptcy Code section 1124 (the "Unimpaired Creditors").  Under Bankruptcy Code section 1126(f), the Unimpaired Creditors are conclusively presumed to have accepted the Plan, and solicitation of votes from these Creditors is not required.  Under the Plan, Holders of Claims in Classes 1, 2, and 6 are deemed Unimpaired Creditors and are, therefore, conclusively presumed to accept the Plan.  Accordingly, solicitation of votes with respect to these Classes of Claims is not required, and Holders of Claims in these Classes need not receive Ballots.

52.     In lieu of a Ballot, the Debtors propose to mail to the Holders of Unclassified Claims and Unimpaired Creditors the Confirmation Hearing Notice and a notice, substantially in the form attached to the Disclosure Statement Order as Exhibit 3 (the "Presumed Acceptance Non-Voting Status Notice"), that will explain to such Holders their non-voting status and how each such Holder may obtain certain materials in the Solicitation Package from the Solicitation Agent.

**D.      The Non-Voting Creditors**

53.     Under the Plan, certain Classes of Claims and Interests are impaired as defined in Bankruptcy Code section 1124 and will not receive or retain any property under the Plan (the "Non-Voting Creditors").  Under Bankruptcy Code section 1126(g), the Non-Voting Creditors are deemed to have rejected the Plan  Under the Plan, Holders of Claims and Interests in Classes 7 and 8 are deemed Non-Voting Creditors and are, therefore, deemed to reject the Plan. Accordingly, solicitation of votes with respect to these classes of claims and interests is not required and Holders of Claims and Interests in these Classes need not receive Ballots.

54.     In lieu of a Ballot, the Debtors propose to mail to Non-Voting Creditors the Confirmation Hearing Notice and a notice, substantially in the form attached to the Disclosure Statement Order as Exhibit 4 (the "Deemed Rejection Non-Voting Status Notice"), that that will explain to such Holders their non-voting status and how each such Holder may obtain certain materials in the Solicitation Package from the Solicitation Agent.

**E.      Returned Solicitation Packages or Notices**

55.     In compliance with Bankruptcy Rules 2002 and 3017, the Debtors sent the Disclosure Statement Hearing Notice to Holders of Claims and Interests; however, the Debtors anticipate that some of the Disclosure Statement Hearing Notices sent to Holders of Claims or Interests may be returned by the United States Postal Service or other carrier as undeliverable. The Debtors believe that it would be costly and wasteful to mail Solicitation Packages to the same addresses to which undeliverable Disclosure Statement Hearing Notices were mailed. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule to excuse the Debtors from mailing the Solicitation Package to those Entities listed at the addresses to which undeliverable Disclosure Statement Hearing Notices were mailed, unless the Debtors,

23

through the Solicitation Agent, are provided with or otherwise locate accurate addresses for such

Entities not less than seven days prior to the Solicitation Mailing Deadline.  The Debtors submit

that if a Holder of a Claim or Interest has changed its mailing address since the Petition Date, the

burden should be on the Holder, not the Debtors, to advise the Solicitation Agent of the new

address.

   56.  Additionally, the Debtors seek to waive the requirement to re-mail

undelivered Solicitation Packages or other undeliverable solicitation-related notices that were

returned marked "undeliverable" or "moved - no forwarding address" or otherwise returned,

unless the Debtors have been informed in writing by such person of that person's new address

five days prior to the Voting Deadline.  The Debtors seek the Court's finding that failure to mail

Solicitation Packages or other notices to such entities will not constitute inadequate notice of the

Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).

**F.**  **Executory Contracts and Unexpired Leases**

   57.  Furthermore, the Debtors will provide all counterparties to executory

contracts and unexpired leases listed on Schedule G of the Debtors' Schedules[9] with the

Confirmation Hearing Notice and a notice, substantially in the form attached to the Disclosure

Statement Order as <u>Exhibit 5</u> (the "<u>Executory Contract and Unexpired Lease Notice</u>"), which

will notify such parties that the Debtors intend to assume and reject executory contracts and

unexpired leases pursuant to Article VII of the Plan.

---

[9] As used herein, "<u>Schedules</u>" means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors pursuant to Bankruptcy Code section 521 [Docket Nos. 130-137, as amended at Docket Nos. 226-227].

## V.    Voting and General Tabulation Procedures

58.    The Debtors respectfully request that the Court approve the voting and tabulation procedures described herein and in Part D of the Solicitation Procedures, in accordance with Bankruptcy Code section 1126(c) and Bankruptcy Rule 3018(a).

## A.    Approval of the Voting Procedures

59.    The Debtors propose that only the following Holders of Claims in the Voting Classes, as of the Voting Record Date, shall be entitled to vote:

(a)    all Entities that, on or before the Voting Record Date have timely filed a proof of claim (or an untimely proof of claim which has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that (i) has not been expunged, disallowed, disqualified, or suspended prior to the Voting Record Date and (ii) is not the subject of an objection pending as of the Voting Record Date, or an objection filed no later than July 12, 2017 (the "Deadline for Debtors to Object to Claims for Voting Purposes"); provided, however, that the Holder of a Claim that is the subject of a pending objection on a reduce and allow and/or reclassify basis shall receive a Solicitation Package based on such Claim in the amount and/or the classification sought in the objection; provided further, however, that Ballots cast by Holders who timely file a proof of claim in respect of a contingent claim or in a wholly unliquidated or unknown amount that is not the subject of an objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of Bankruptcy Code section 1126(c); provided further, however, that, if a proof of claim is filed as partially liquidated and partially unliquidated, such Claim will be allowed for voting purposes only in the liquidated amount;

(b)    all Entities listed in the Schedules as holding a noncontingent, liquidated, undisputed Claim as of the Voting Record Date, except to the extent that such Claim was paid, expunged, disallowed, disqualified, suspended, or superseded by a timely filed proof of claim (or an untimely proof of claim which has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) prior to the Voting Record Date;

(c)    all Entities that hold Claims pursuant to an agreement or settlement with the Debtors executed prior to the Voting Record Date, as reflected in a document filed with the Court, in an order entered by the Court, or in a document executed by the Debtors pursuant to authority granted by the Court (including, without limitation, the Prepetition Agent and each of the

25

Prepetition Lenders), regardless of whether a proof of claim has been filed; and

(d)     the assignee of any Claim described in subparagraphs (a)–(c) above in lieu of the assigning entity; <u>provided</u> that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Solicitation Agent's claims register on the Voting Record Date.

## B.     Procedures for Temporary Allowance of Claims Pursuant to Bankruptcy Rule 3018 for Voting Purposes

60.     Bankruptcy Rule 3018(a) provides in relevant part that "[n]otwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).  Accordingly, the Debtors propose the following procedures, set forth in Paragraph D.2 of the Solicitation Procedures, for the Holder of a Claim not entitled to vote on the Plan pursuant to the procedures described above (each such claim, a "<u>Disputed Claim</u>") to seek permission to vote such claim (or to vote such claim in an amount other than the amount set forth in the Schedules).

61.     In particular, the Holder of a Disputed Claim shall be entitled to vote such Claim only if one of the following shall have occurred with respect to such Claim at least five business days prior to the Voting Deadline (the "<u>Voting Resolution Event Deadline</u>"): (a) an order is entered by the Court allowing such Disputed Claim under Bankruptcy Code section 502(b), after notice and a hearing; (b) a Creditor files with the Court a motion for an order under Bankruptcy Rule 3018(a) temporarily allowing such Disputed Claim in a specified amount only for purposes of voting to accept to reject the Plan (a "<u>Rule 3018(a) Motion</u>") and such Rule 3018(a) Motion is subsequently approved by this Court after notice and a hearing, pursuant to the procedures described in paragraph 64 of this Motion; (c) a stipulation or other agreement is

executed between the Holder of the Disputed Claim and the Debtors resolving the Debtors'

objection and allowing the Holder of such Disputed Claim to vote its Claim in an agreed upon

amount; (d) a stipulation or other agreement is executed between the Holder of the Disputed

Claim and the Debtors temporarily allowing the Holder of such Disputed Claim to vote its Claim

in an agreed upon amount; or (e) the pending objection to the Disputed Claim is voluntarily

withdrawn by the Debtors or overruled by this Court (each, a "Resolution Event").

62.    The Debtors request that this Court direct that Rule 3018(a) Motions must

(a) be made in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the

Local Bankruptcy Rules; (c) set forth the name of the party asserting the Rule 3018(a) Motion; (d)

state with particularity the legal and factual bases for the Rule 3018(a) Motion; (e) be set for

hearing at the Confirmation Hearing; and (f) be served so as to be received by the Notice Parties

no later than the Voting Resolution Event Deadline.

63.    No later than two business days after a Resolution Event, the Solicitation

Agent shall distribute a Ballot and a pre-addressed, postage pre-paid envelope to the relevant

Holder of the Disputed Claim, which must be returned to the Solicitation Agent by no later than

the Voting Deadline (unless the Debtors extend the deadline to facilitate a reasonable

opportunity for such Creditor to vote upon the Plan).  If an objection to a Disputed Claim was

filed by the Debtors after the applicable Voting Record Date but on or before the Claims Voting

Objection Deadline, the Ballot of the Holder of such Disputed Claim will not be counted absent a

Resolution Event taking place prior to the Confirmation Hearing.

64.    The Debtors further request that, in the event that the Debtors and the

Holder of the Disputed Claim are unable to resolve any issues raised by the Rule 3018(a) Motion

prior to the Confirmation Hearing, (a) the Debtors may object to the Rule 3018(a) Motion at the

Confirmation Hearing (without filing a written objection); (b) the Solicitation Agent shall inform the Court at or prior to the Confirmation Hearing whether including such provisional Ballot would affect the outcome of the voting to accept or reject the Plan in the relevant class in which the provisional Ballot was cast; and (c) the Court then shall determine whether the provisional Ballot should be counted as a vote on the Plan.  Such a procedure will help ensure an efficient tabulation of Ballots to be completed by the Confirmation Hearing.

65.      The Debtors request that the Holder of a Disputed Claim be permitted to vote such Claim (or to vote such Claim in an amount other than the amount set forth in the Schedules) only pursuant to the procedures set forth in Paragraph D.2 of the Solicitation Procedures and above.

**C.      Approval of the General Tabulation Procedures**

66.      In tabulating votes, the Debtors propose that the hierarchy described in Paragraph D.3 of the Solicitation Procedures be used to determine the amount of the Claim associated with the Holder of such Claim's vote.  The amount of the Claim established pursuant to Paragraph D.3 of the Solicitation Procedures shall control for voting purposes only and shall not constitute the Allowed amount of any Claim or the amount of any Claim for any other purpose.

67.      The Debtors also propose to use the voting procedures and standard assumptions in tabulating Ballots set forth in Paragraph D.4 of the Solicitation Procedures. The Debtors believe that the requested Solicitation Procedures and other relief requested herein: (a) are cost-effective; (b) provide Holders of Claims and Interests and all parties in interest with adequate notice and opportunity to be heard; and (c) are in the best interests of the Debtors' estates, Holders of Claims, and other parties in interest.

## VI.    The Rights Offering

### A.    The Rights Offering Procedures and Rights Offering Materials

68.    The Debtors formulated the Rights Offering Procedures and Rights Offering Materials, all as attached to the Disclosure Statement Order as <u>Exhibit 7</u>,[10] for the conduct of the Rights Offering.[11]    The Rights Offering and solicitation of votes to approve the Plan will commence on the same date (the "<u>Commencement Date</u>").    The Rights Offering Procedures provide that, on the Commencement Date, the Rights Offering Agent will provide to each Eligible Holder a form to exercise Subscription Rights (the "<u>Rights Exercise Form</u>"), which will include a certification (the "<u>Investor Certification</u>") in which the Eligible Holder must certify that it is an "accredited investor" as defined in Rule 501(a)(1), (2), (3), (7), or (8) under the Securities Act or a "qualified institutional buyer" as defined in Rule 144A under the Securities Act.

69.    In order for an Eligible Holder to validly exercise its Subscription Rights, the Rights Offering Agent must receive, prior to the Rights Offering Expiration Time, (a) a completed and signed Rights Exercise Form, including the Investor Certification and (b) if such Eligible Holder is not a Backstop Investor, deliver, via wire transfer to the account indicated in the Rights Exercise Form, the Funding Amount, as specified in the Rights Offering Procedures.

---

[10]    Capitalized terms used in this section, but not otherwise defined in the Motion, shall have the meanings set forth in the Rights Offering Procedures, unless otherwise indicated.

[11]    As reflected in the Plan, the Debtors anticipate entering into a Backstop Commitment Agreement with the DIP Agent and other DIP Lenders to backstop the Rights Offering.    The Debtors contemplate filing a copy of the Backstop Commitment Agreement in advance of the Disclosure Statement Hearing and seeking approval thereof at the Disclosure Statement Hearing.

B.    **Appointment of KCC as Subscription Agent**

70.    As set forth above, the Debtors were authorized to retain KCC as their

Solicitation Agent with respect to the solicitation of votes on the Plan.  This Court also entered

an order authorizing the Debtors to retain KCC as administrative agent in the Chapter 11 Cases

[Docket No. 108].  The Debtors believe that such retention is broad enough to encompass KCC's

services as subscription agent for the Rights Offering (the "Subscription Agent").  Nonetheless,

for the avoidance of doubt, the Debtors request authorization for KCC to act as Subscription

Agent in connection with the Rights Offering, pursuant to their existing engagement letter, as

previously approved by this Court.

71.    KCC is well-positioned to serve as the Debtors' Subscription Agent.  As

noted above, KCC is the Debtors' Solicitation Agent, administrative agent, and has also been

retained as claims and noticing agent [Docket No. 36].  Accordingly, KCC is familiar with the

context of the cases, the creditor constituency, and previous mailings.  KCC will be serving as

Solicitation Agent in connection with solicitation of votes on the Plan, which process will run

concurrent with the Rights Offering.  Having KCC serve in both capacities will create materially

efficiencies.  Finally, KCC possesses expertise in conducting rights offering and has served in

such capacity in other cases.  See, e.g., In re Modular Space Holdings, Inc., Case No. 16-12825

(KJC) (Bankr. D. Del. Dec. 21, 2016); In re Erickson Inc., Case No. 16-34393 (HDH) (Bankr.

N.D. Tex. Nov. 8, 2016); In re Chaparral Energy, Inc., Case No. 16-11144 (LSS) (Bankr. D. Del.

May 9, 2016); In re CHC Group Ltd., Case No. 16-31854 (BJH) (Bankr. N.D. Tex. May 5, 2016);

In re Peabody Energy Corp., Case No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 13, 2016); In re

Overseas Shipholding Grp., Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. Nov. 14, 2012).

**C.      The Rights Offering Procedures and Rights Offering Materials Are Fair and Appropriate.**

72.     The Rights Offering is a critical component of the Plan.  The Debtors believe that the Rights Offering Procedures and the related Rights Offering Materials are necessary to successfully implement the Rights Offering and provide Eligible Holders a fair and reasonable opportunity to participate in the Rights Offering.

73.     Courts in this district have approved comparable procedures in other cases. See In re Triangle USA Petroleum Corp., Case No. 16-11566 (MFW) (Bankr. D. Del. Jan. 13, 2017) (approving rights offering procedures); In re Quiksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. Dec. 4, 2015) (same); In re Exide Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. Feb. 4, 2015) (same); In re Overseas Shipholding Grp., Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. May 27, 2014) (same); In re William Lyons Homes, Case No. 11-14019 (CSS) (Bankr. D. Del. Dec. 29, 2011) (same); In re Satelites Mexicanos, S.A. de C.V., Case No. 11-11035 (CSS) (Bankr. D. Del. April 11, 2011) (same); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. May 10, 2011) (approving accreditor investor procedures in connection with proposed rights offering); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. June 28, 2010) (approving rights offering procedures); In re Cooper-Standard Holdings Inc., Case No. 09-12743 (PJW) (Bankr. D. Del. March 26, 2010) (same).

74.     Under Bankruptcy Code section 105(a), "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In essence, the Court may enter an order that safeguards the value of the debtor's estate if doing so is consistent with the Bankruptcy Code.  See, e.g., Chinichian v. Campolongo (In re Chinichian) 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper

<u>Props. Liquidating Trust, Inc.</u>, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (acknowledging that "the [b]ankruptcy [c]ourt is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").  Because approval of the Rights Offering Procedures and the related Rights Offering Materials are necessary to effectuate the Plan—which represents the Debtors' best means of protecting the value of their estates and maximizing recoveries—the Debtors believe that the Court's application of Bankruptcy Code section 105(a) is appropriate under the circumstances of these cases.

## NOTICE

75.     Notice of this Motion shall be given to (a) the United States Trustee; (b) counsel to the agent for the Debtors' prepetition secured lenders; (c) counsel to the agent for the Debtors' postpetition secured lenders; (d) counsel to the Creditors' Committee; and (e) any such other party entitled to notice pursuant to Bankruptcy Rule 2002(b) and Local Bankruptcy Rule 2002-1.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

76.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the

Disclosure Statement Order, substantially in the form annexed hereto, granting the relief sought

herein and granting such other and further relief as may be just and proper.


Dated:  Wilmington, Delaware
      June 8, 2017

                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                */s/ Robert A. Weber*
                Robert A. Weber (I.D. No. 4013)
                Alison M. Keefe (I.D. No. 6187)
                One Rodney Square
                P.O. Box 636
                Wilmington, Delaware 19899-0636
                Telephone: (302) 651-3000
                Fax: (302) 651-3001

                - and -

                George N. Panagakis
                Christopher M. Dressel
                Tabitha J. Atkin
                155 N. Wacker Dr.
                Chicago, Illinois 60606
                Telephone: (312) 407-0700
                Fax: (312) 407-0411

                Counsel for Debtors and Debtors in Possession