]IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RYCKMAN CREEK RESOURCES, LLC, *et al.*,[1]<br>                              Debtors. | Chapter 11<br><br>Case No. 16-10292 (KJC)<br><br>(Jointly Administered)<br><br>**Requested Hearing Date:**<br>**October 9, 2018 at 2:00 p.m.**<br><br>**Requested Objection Deadline:**<br>**October 8, 2018 by 12:00 p.m.** |

### LIQUIDATING TRUSTEE'S MOTION TO APPROVE SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

JLL Consultants, Inc. ("**JLL**"), solely in its capacity as liquidating trustee (the "**Liquidating Trustee**") of the Ryckman Liquidating Trust (the "**Liquidating Trust**"), and in accordance with its rights and duties under the *Fourth Modified Fourth Amended Joint Chapter 11 Plan of Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors-In-Possession* [Doc. 1364] (as modified, supplemented, and amended) in the above-captioned jointly-administered bankruptcy cases (the "**Plan**"),[2] files this Motion to Approve Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "**Motion**") for entry of an order approving the (i) the Global Settlement (defined below); (ii) that certain Settlement Agreement (the "**Plan Sponsor Settlement**") dated as of September 18, 2018 between the Liquidating Trustee and Plan Sponsor Belle Butte LLC (the "**Plan Sponsor**") resolving all disputes between them, including without limitation the dispute detailed in the *Liquidating*

---

[1]  The Reorganized Debtors and, where applicable, the last four digits of their respective taxpayer identification numbers are as follows: Ryckman Creek Resources, LLC (4180), Ryckman Creek Resources Holding Company LLC, Peregrine Rocky Mountains LLC, and Peregrine Midstream Partners LLC (3363). The address of the Debtors' corporate headquarters is 3 Riverway, Suite 1100, Houston, TX 77056.

[2]  Capitalized terms not defined herein have the meanings given to them either in the Plan and/or the Confirmation Order, as applicable.

*Trustee's Motion to Enforce Plan Provisions as to Plan Sponsor Belle Butte, LLC and Request for Stay* [Docket No. 1462] (the "**Motion to Enforce Plan Provisions**");[3] and (iii) the Purported Lienholder Claims (defined below), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## INTRODUCTION

4.      Subject to approval of the Bankruptcy Court, the Liquidating Trustee has settled material disputes involving protracted litigation with the Plan Sponsor pertaining to the Plan Sponsor's obligations under the Plan and Plan Sponsorship Transaction Documents, as well as ongoing disputes with certain Purported Statutory Lienholders (as defined below).

5.      The Liquidating Trustee's vigorous efforts to settle these disputes, if approved by the Court, will result in a lump-sum cash payment of $17 million[4] to the Liquidating Trust that will be distributed to creditors and parties in interest in accordance with their respective priorities, as outlined in this Motion.

6.      The arms-length negotiated settlements described herein are in the best interests of the creditors, the Liquidating Trust and its beneficiaries, as they will result in a global

---

[3]   The Liquidating Trustee, as a party to whom certain rights and responsibilities have been entrusted to liquidate certain assets of the Debtors' estates for the benefit of creditors, has standing to move for approval of a settlement under Fed. R. Bankr. P. 9019.  *See In re TSIC, Inc.*, 393 B.R. 71, 77-78 (Bankr. D. Del. 2008).

[4] To the extent that the Liquidating Trust is unable to produce the original Plan Sponsor Note (defined below) to the Plan Sponsor as per <u>Section 6</u> of the Plan Sponsor Settlement Agreement (defined below), this amount will be reduced to $16,690,000.

resolution of contested matters and certain pending adversary proceedings in the Bankruptcy Case (the "**Global Settlement**").[5]

7.      The approval of these settlements will not only avoid unnecessary expense and uncertainty associated with pending litigation with both the Plan Sponsor and the Purported Statutory Lienholders (as defined below), but will result in a meaningful and prompt distribution for the benefit of all stakeholders, including without limitation for Holders of Administrative Claims, DIP Facility Claims, and Unsecured Claims.

8.      For the reasons discussed below, the Liquidating Trustee respectfully submits that the settlement reached with the Plan Sponsor, the Purported Statutory Lienholders (as defined below), and the proposed Global Settlement are in the best interests of the Liquidating Trust and all creditors and parties in interest in this Bankruptcy Case, and should be approved accordingly pursuant to Rule 9010 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A.      Commencement of Debtors' Cases and Establishment of Liquidating Trust.**

(i)      Commencement of the Debtors' Chapter 11 Cases and Confirmation of the Plan

9.      On February 2, 2016 (the "**Petition Date**"), Ryckman Creek Resources, LLC and certain related entities (the "**Debtors**") each commenced with this Court voluntary cases under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), jointly administered under *In re Ryckman Creek Resources, LLC, et al.*, Case No. 16-10292 (KJC) (the "**Bankruptcy Case**").

10.      On December 22, 2017, the Court entered an order confirming the Plan [Doc. 1403 (the "**Confirmation Order**"). The Effective Date of the Plan occurred on December 27, 2017.

---

[5] Following approval of the Global Settlement, the Liquidating Trust will continue its claims analysis and filing of objections regarding Unsecured Claims, as contemplated in the Liquidating Trust Agreement and the Plan.

(ii)    Establishment of the Liquidating Trust

11.    Pursuant to Article 12.1 of the Plan, a Liquidating Trust was established in accordance with the terms of a Liquidating Trust Agreement approved in connection with confirmation of the Plan (the "**Liquidating Trust Agreement**").[6]    Under the Plan and Confirmation Order, the Liquidating Trustee was appointed to administer the Liquidating Trust for the benefit of the beneficiaries thereof.

**B.    Authority of the Liquidating Trustee to Settle Claims and Controversies**

12.    The Liquidating Trust Agreement authorizes the Liquidating Trustee to liquidate assets and settle controversies as necessary in the best interests of the creditors that will receive distributions from the Liquidating Trust.[7]

13.    Pursuant to section 4.1(a) of the Liquidating Trust Agreement, the Liquidating Trustee is responsible for liquidating and distributing assets of the Liquidating Trust "in a manner so as to reasonably maximize the value of the Liquidating Trust Assets and the distribution to the Beneficiaries." Liquidating Trust Agreement § 4.1(a); *see also* § 2.6 (vesting authority in Liquidating Trustee to pursue and settle the Debtors' causes of action); § 6.17 (requiring the Trustee to "prosecute, collect, compromise, and settle" causes of action).

**C.    The Plan Sponsorship Transaction.**

(i)    The Plan Sponsorship Transaction

14.    The Plan was premised on a transaction encompassing a sale of the Debtors' natural gas storage facility and business to the Plan Sponsor (as defined in the Plan and hereinafter referred to as the "**Plan Sponsorship Transaction**").

---

[6]    A copy of the Liquidating Trust Agreement, as amended, was filed on the docket as Exhibit E to the *Notice of Filing of Fourth Plan Supplement with Respect to the Fourth Modified Fourth Amended Joint Chapter 11 Plan of Reorganization of Ryckman Creek Resources, LLC and its Affiliated Debtors and Debtors-in-Possession* [Doc. 1395].

[7] *See* Liquidating Trust Agreement at §§ 4.1, 2.6, and 6.17.

15.     Consideration for the sale contemplated under the Plan Sponsor Transaction included the following:

a.     $16 million cash payment to the Liquidating Trust by the Plan Sponsor;

b.     $10 million note executed by the Plan Sponsor in favor of the Liquidating Trust ("**Plan Sponsor Note**"); and

c.     Transfer of 20% of the Class B Membership Interests in Reorganized Ryckman (the "**Liquidating Trust Interests**") to the Liquidating Trust (with the Plan Sponsor owning the remaining 80%)

16.     As set forth more fully in the Plan, and as discussed below, the proceeds of the Plan Sponsor Transaction provided funding for distribution by the Liquidating Trust to various creditor constituencies, including without limitation Holders of Administrative Claims, DIP Facility Claims, Statutory Lien Claims, and Unsecured Claims.

(ii)     <u>The Liquidating Trust Put Options and Corresponding Plan Sponsor Call Options</u>

17.     In order to monetize Liquidating Trust Interests and maximize recovery for various creditor constituencies, put and call options were put in place under Reorganized Ryckman's *Amended and Restated Limited Liability Company Agreement of Ryckman Creek Resources, LLC* dated as of December 27, 2017 (the "**LLC Agreement**") for the Liquidating Trustee and the Plan Sponsor, respectively.

18.     The Liquidating Trust Put Options for the Liquidating Trust Interests, if exercised, were for the following periods and prices:

a.     September 27, 2018 to October 27, 2018, at $1.4 million for each 25% lot,[8] i.e., a total of $5.6 million if all put options were to be exercised by the Liquidating Trustee during this period;

b.     May 27, 2019 to June 26, 2019, at $1.8 million for each 25% lot, i.e., a total of $7.2 million if all put options were to be exercised during this period

---

[8] The Trust's 20% could be sold in 25% lots.

19.     The corresponding Plan Sponsor Call Option enabling the Plan Sponsor to purchase all of the Liquidating Trust Interests set a call price to be determined pursuant to the formula set forth in Article 1.110 of the Plan and Section 9.11(c) of the LLC Agreement.

20.     Under this formula, the call price to be paid upon the Plan Sponsor's exercise of the Plan Sponsor Call Option was calculated as (a) the greater of (i) the Fair Market Value (as defined in the Reorganized Ryckman LLC Agreement) of the Liquidating Trust Interests as determined by an independent appraiser and (ii) the value of the Liquidating Trust Common Units assuming an equity value of Reorganized Ryckman equal to $50 million plus (b) $1 million (hereinafter, the "**Call Price**").[9]  The Call Price formula results in a minimum floor price of $11 million for the Liquidating Trust Interests.

21.     As discussed in more detail below, a portion of the proceeds to be paid on account of the Plan Sponsor's exercise of the Plan Sponsor Call Option under Section 9.11(c) of the LLC Agreement are subject to the first-priority liens of certain purported statutory lienholders of the Debtors granted to such lienholders pursuant to Article 1.137 of the Plan. However, the incremental $1 million portion of the Plan Sponsor Call Option proceeds referenced in the formula above is earmarked to cover payment of the Liquidating Trust's professional fees and expenses and any shortfall of the Chapter 11 administrative expenses.[10]

(iii)     The Plan Sponsor Note

22.     Another key portion of the consideration for the Plan Sponsor Transaction provided by the Plan Sponsor was its execution of the Plan Sponsor Note, in the original principal amount of $10 million.  The Plan Sponsor Note does not contain terms or provisions that provide for accrual of interest or application of any interest rate.  Under its terms, the Plan Sponsor Note was to mature on the earlier of (a) December 27, 2022, or (b) the Plan Sponsor's

---

[9] *See* Article 1.110 of the Plan and Section 9.11(c) of the LLC Agreement.

[10] *See* Plan at Art. 1.111(a).

exercise of the Plan Sponsor Call Option for purchase of the Liquidating Trust Interests in Reorganized Ryckman.[11]

23.    Article 9.2(c) of the Plan provides that the Plan Sponsor Note proceeds are to be distributed on a Pro Rata basis in satisfaction all Cash-Settled Claims.  Cash-Settled Claims, as defined in Article 1.19 of the Plan, include all First-Out DIP Facility Claims, Professional Claims, Cure Claims, Other Priority Claims, and all Administrative Claims other than DIP Facility Claims that are not First-Out DIP Facility Claims.

(iv)    <u>DIP Facility and Distribution from the Plan Sponsor Note</u>

24.    Following the Petition Date, Ryckman entered into that certain Senior Secured Super-Priority Debtor-In-Possession Credit and Security Agreement, dated as of March 24, 2016, by and among, each of the lenders party thereto (the "**DIP Lenders**"), and ING Capital LLC, as administrative agent (the "**DIP Agent**"), as amended, supplemented, or otherwise modified from time to time (the "**DIP Credit Agreement**").

25.    Pursuant to Paragraph 5 of the DIP Order, the DIP Lenders were granted a DIP Superiority Claim (as defined in the DIP Order, hereinafter the "**DIP Superpriority Claim**") for all amounts advanced pursuant to the DIP Credit Agreement.  Due to the DIP Agent's election under Section 9.6(e) of the Plan, the DIP Facility Claims will not share in the proceeds of the Plan Sponsor's exercise of the Plan Sponsor Call Option.  However, pursuant to Article 9.2 of the Plan, and because of the DIP Superpriority Claim, after all of the Cash-Settled Claims are satisfied in full, the remainder of the Plan Sponsor Note Proceeds are to be distributed to the DIP Agent in satisfaction of the DIP Facility Claims.

**D.    <u>Settlement of Disputes with Plan Sponsor Regarding Call Price and Asserted Setoff</u>**

26.    On June 7, 2018, the Plan Sponsor notified the Liquidating Trustee by letter that it was exercising the Plan Sponsor Call Option to purchase the Liquidating Trust Interests.

---

[11] *See* Plan Sponsor Note at Section 2.1.

27.     On June 25, 2018, the Liquidating Trustee filed its Motion to Enforce Plan Provisions [Docket No. 1462], seeking to enforce the Plan Sponsor's exercise of the Plan Sponsor Call Option pursuant to the terms of the Plan and Plan Sponsorship Transaction Documents.

28.     Among other things, the Liquidating Trustee asserted in the Motion to Enforce Plan Provisions that pursuant to the Plan and Plan Sponsorship Transaction Documents, upon the Plan Sponsor's exercise of the Plan Sponsor Call Option: (i) the Plan Sponsor Note was accelerated and became immediately due and payable; (ii) the Plan Sponsor currently owes $10,000,000.00 to the Liquidating Trust under the accelerated Plan Sponsor Note; and (iii) the Call Price to be paid at closing of the sale of the Liquidating Trust Interests to the Plan Sponsor pursuant to the Plan Sponsor's exercise of the Plan Sponsor Call Option totals no less than $11,000,000.00, comprised of $10,000,000.00 on account of the Class B Membership Interests plus $1,000,000.00 on account of the Plan Sponsor Call Option Incremental Consideration.

29.     On July 30, 2018, the Plan Sponsor filed an Objection to the Motion to Enforce Plan Provisions in the Bankruptcy Case [Docket No. 1464] (the "**Objection to Motion to Enforce**"), asserting, among other things, that: (i) the Class A Membership Interests (as such term is defined in the LLC Agreement, hereinafter referred to as the "**Class A Membership Interests**") are equity interests that must be valued and deducted from the assumed $50 million "equity value" referenced in Section 9.11(c) of the LLC Agreement; and (ii) the LLC Agreement requires an appraisal to calculate the Call Price and does not contain a $10,000,000.00 fixed amount.

30.     The Plan Sponsor further asserts that, pursuant to Section 5.6 of the Plan Sponsor Agreement dated December 13, 2007 and entered into among the Debtors and the Plan Sponsor (the "**Plan Sponsor Agreement**"), the Plan Sponsor is entitled to a setoff of $2,442,001

(the "**Asserted Setoff**") against any and all amounts that may be due to the Liquidating Trust pursuant to the Plan Sponsor Note.

31.     On July 24, 2018, the Liquidating Trustee filed a Supplement to the Motion to Enforce in the Bankruptcy Case [Docket No. 1488] (the "**Supplement to Motion to Enforce**"), asserting, among other things, that (i) the Plan Sponsor's Asserted Setoff seeks reimbursement for items not required to be reimbursed by the Liquidating Trust under Section 5.6 of the PSA, and (ii) the Asserted Setoff is time-barred under Section 5.6 of the Plan Sponsor Agreement.  In response to the Supplement to Motion to Enforce, the Plan Sponsor filed a Preliminary Response and Reservation of Rights [Docket No. 1489] (the **"Preliminary Response to Supplement"**), contending, among other things, that the Asserted Setoff was timely sought, and reserving rights to further object to the Supplement to Motion to Enforce.

32.     Following hearings and argument before the Bankruptcy Court, on August 29, 2018, the Bankruptcy Court entered an Opinion and Order granting the Motion to Enforce Plan Provisions (the "**Order Granting Motion to Enforce**") [Docket No. 1503], and ordering the Plan Sponsor to (i) pay to the Liquidating Trust $11,000,000.00 in exchange for the Class B Membership Interests pursuant to Section 9.11(c) of the LLC Agreement; and (ii) pay the outstanding balance of $10,000,000.00 to the Liquidating Trust on the accelerated Plan Sponsor Note in accordance with Section 7.1 of the Plan Sponsor Note.

33.     On September 11, 2018, the Plan Sponsor filed (i) a Notice of Appeal in the Bankruptcy Case with regard to the Order Granting Motion to Enforce [Docket No. 1507] (the "**Notice of Appeal**"); and (ii) a Motion to Alter and Amend the Order Granting Motion to Enforce and Related Relief [Docket No. 1506] (the "**Motion to Amend Order Granting Motion to Enforce**");

34.     Hereinafter, the Motion to Enforce Plan Provisions; the Supplement to Motion to Enforce; the Preliminary Response to Objection to Motion to Enforce; the Order Granting

Motion to Enforce; the Notice of Appeal; and the Motion to Amend Order Granting Motion to Enforce shall be collectively referred to as the "**Motion to Enforce Plan Proceedings**").

35.     Following arms-length and good faith negotiations, and subject to approval of the Bankruptcy Court pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Liquidating Trustee and the Plan Sponsor entered into that certain Settlement Agreement dated as of September 18, 2018 (the "**Plan Sponsor Settlement Agreement**"), to resolve all issues between them without further litigation, including all issues, claims, and/or causes of action arising under or relating to (i) the Plan and Plan Sponsorship Transaction Documents, including without limitation the LLC Agreement and the Plan Sponsor Note; (ii) the Motion to Enforce Plan Proceedings; and (iii) the Asserted Setoff, in accordance with the terms of the Plan Sponsor Settlement Agreement.   A true and correct copy of the Plan Sponsor Settlement Agreement is attached hereto as **Exhibit 1**.

36.     The material terms of the Plan Sponsor Settlement Agreement, as more specifically described therein, are summarized as follows:

> a.     **Settlement Funds.**  The Plan Sponsor will pay to the Liquidating Trust $17,000,000.00 (the "**Settlement Funds**")[12], comprised of (a) $6,903,035.00 for payment on the Plan Sponsor Note after applying the Asserted Setoff, plus (b) $10,096,965.00[13] for payment on account of the Plan Sponsor's exercise of the Plan Sponsor Call Option and the Plan Sponsor's payment of the Call Price (which includes the Plan Sponsor Call Option Incremental Consideration).   The settlement funds have been deposited by the Plan Sponsor in its counsel's IOLTA account (the "**Settlement Funds Account**").

> b.     **Bankruptcy Court Approval**.   The Plan Sponsor Settlement Agreement is subject to the Bankruptcy Court's entry of an Order (the "**9019 Order**") granting this Motion and approving the terms of the Plan Sponsor Settlement Agreement and the Global Settlement.   The 9019 Order must be entered and become a final order no later than November 8, 2018, or as may be agreed upon in writing (the "**9019 Approval Deadline**").   The 9019 Order must

---

[12] $16,690,000 if the Liquidating Trustee if the $17 million settlement amount from the Plan Sponsor is reduced pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[13] $9,786,965 if the $17 million settlement amount is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

be mutually acceptable to the parties and provide that: (i) the $6,903,035.00 of the Settlement Funds allocated to all remaining amounts outstanding under the Plan Sponsor Note will be used to first pay all Cash-Settled Claims prior to payment of any other claims against the Debtors or their respective estates, and then to DIP Facility Claims; and (ii) the remaining portion of the Settlement Funds allocated to the Plan Sponsor's exercise of the Plan Sponsor Call Option and the Plan Sponsor's payment of the Call Price (which includes the Plan Sponsor Call Option Incremental Consideration), shall be distributed to creditors in accordance with their respective priorities set forth in the Plan and as summarized in the Plan Sponsor Settlement Agreement.  The Plan Sponsor's approval of entry of the 9019 Order shall not be unreasonably withheld if the provisions of the 9019 Order are substantially similar to the terms and conditions of the Plan Sponsor Settlement Agreement.  If the relief requested in this Motion is not granted by the Bankruptcy Court and the 9019 Order is not entered by the 9019 Approval Deadline, then the Plan Sponsor Settlement Agreement will be null and void with all parties reserving their respective rights. Pending the date that the 9019 Order becomes a final order, the parties agree to stay, suspend, and toll all deadlines and proceedings relating to (i) the Motion to Enforce Plan Proceedings, and (ii) all of the Liquidating Trust's obligations under the Plan Sponsor Transaction Documents, including without limitation the date(s) and deadline(s) by which the Liquidating Trustee must exercise its put options pursuant to the LLC Agreement.

### c.      Release of Funds from the Settlement Funds Account.

i.      Prior to the 9019 Approval Deadline, the Plan Sponsor is prohibited from allowing the Settlement Funds to be withdrawn or refunded from the Settlement Funds Account. The Plan Sponsor has acknowledged that the withdrawal or refund of the Settlement Funds from the Settlement Funds Account prior to the 9019 Approval Deadline would cause immediate and irreparable harm to the Liquidating Trust, and has agreed that the Liquidating Trustee will be entitled to specific performance and damages if the Settlement Funds are prematurely withdrawn or refunded.

ii.      Provided (a) the 9019 Order is entered and becomes a final order by the 9019 Approval Deadline, and (b) the Liquidating Trust executes and delivers the Settlement Transaction Documents (as defined in the Plan Sponsor Settlement Agreement) to the Plan Sponsor, within one (1) business day thereafter, the Plan Sponsor will cause and direct that the Settlement Funds be transferred by wire to the Liquidating Trust from the Settlement Funds Account in accordance with written wire instructions provided by the Liquidating Trustee.

iii.      If the relief requested in the 9019 Motion is not granted by the Bankruptcy Court and the 9019 Order is not entered by

the 9019 Approval Deadline, then the Settlement Funds will be refunded to the Plan Sponsor.

     d.    **Withdrawal of Certain Pleadings After Entry of 9019 Order**. So long as the 9019 Order is entered by the Bankruptcy Court and becomes a final order by the 9019 Approval Deadline, and within one (1) business day following the date that the Settlement Funds are received by the Liquidating Trust, (i) the Plan Sponsor will file a Notice of Withdrawal with respect to both the Notice of Appeal and the Motion to Amend Order Granting Motion to Enforce, and (ii) the Liquidating Trust will file a notice withdrawing the Supplement to Motion to Enforce.

     e.    **Transfer of Liquidating Trust Rights and Interests in Reorganized Ryckman to Plan Sponsor.**  So long as the 9019 Order is entered by the Bankruptcy Court and becomes a final order by the 9019 Approval Deadline, and subject to its receipt of the Settlement Funds, the Liquidating Trustee will assign the Liquidating Trust's rights and interests in Reorganized Ryckman, including but not limited to the Liquidating Trust's Class B Membership Interests, to the Plan Sponsor via a quit claim assignment in the form attached to the Plan Sponsor Settlement Agreement.  The quit claim assignment will be held in escrow by the Plan Sponsor's counsel, Stinson Leonard, and shall not be released to the Plan Sponsor or be effective until the Settlement Funds are received by the Liquidating Trust.

     f.    **Satisfaction of Liquidating Trust's Debt and Related Instruments**.  So long as the 9019 Order is entered by the Bankruptcy Court and becomes a final order by the 9019 Approval Deadline, and subject to its receipt of the Settlement Funds, the Liquidating Trust will execute and deliver to Plan Sponsor's counsel documents causing the Mortgage to be released, the Plan Sponsor Note to be deemed paid in full, and the Guarantee to be discharged, and shall deliver to the Plan Sponsor (a) the original Plan Sponsor Note and the Guarantee (or alternatively, a lost note affidavit for the original Plan Sponsor Note and the original Guarantee, and the 9019 Order shall provide that the Plan Sponsor Note and the Guarantee are of no force and effect upon payment of the Settlement Funds). Copies of the form(s) of document(s) to be executed and delivered by the Liquidating Trustee are attached to the Plan Sponsor Settlement Agreement.  The original Plan Sponsor Note and original Guarantee (or alternatively the lost note affidavit for the original Plan Sponsor Note and the Original Guarantee), shall be held in escrow by the Plan Sponsor's counsel, Stinson Leonard, and shall not be released to the Plan Sponsor or deemed to be effective until the Settlement Funds are received by the Liquidating Trust.

     g.    **Mutual Releases**.  The Plan Sponsor and Liquidating Trustee will provide each other with mutual releases (as more specifically set forth in Section 7 of the Plan Sponsor Agreement).

E.   **Settlement of Purported Statutory Lienholder Claims**

37.      On April 8, 2016, Brock Services, LLC filed *Proof of Claim No. 108* ("**Brock Claim**)" asserting (a) purported amounts owed to Brock by the Debtors totaling $4,427,532.00, and (b) the existence and priority of a purported statutory lien pursuant to Wy. Stat. § 29-3-101 et seq.

38.      On April 8, 2016, William Insulation Inc. ("**WIC**," together with Brock, the "**Purported Lienholders**") filed *Proof of Claim No. 62* (the "**WIC Claim**", and together with the Brock Claim, the **"Purported Lienholder Claims"**) asserting (a) purported amounts owed to WIC by the Debtors totaling $6,118,293.69, and (b) the existence and priority of a purported statutory lien pursuant to Wy. Stat. § 29-3-101 *et seq*.

39.      Brock and the Liquidating Trustee are parties to currently pending adversary proceedings, Adv. Proc. No. 16-51045 (the "**Brock Adversary Proceeding**") in the Bankruptcy Case seeking to determine the validity, priority, and extent of the statutory liens asserted in Brock's Purported Lienholder Claim.  The Liquidating Trustee disputes the validity, priority, and extent of the statutory liens asserted by the Purported Lienholders.  As of the date of this Motion, the Brock Adversary Proceeding is stayed pending discussions among the parties concerning potential resolution of the Purported Lienholder Claims.

40.      Pursuant to the Confirmation Order, the adversary proceeding relating to the validity, priority, and extent of the statutory liens asserted by William (Adv. Proc. No. 16-51501) was dismissed without prejudice.[14] However, the Confirmation Order provides that to the extent the Liquidating Trustee and William do not reach consensual resolution of the WIC claim within nine (9) months of the Effective Date of the Plan, each party has the right to file an appropriate declaratory judgment action in a state or federal court in Wyoming to seek a priority determination as to William's Purported Lienholder Claim.

---

[14] See Confirmation Order [Docket No. 1403] at ¶ 33(a).

41.     Pursuant to Article 1.137 of the Plan, the Purported Lienholders, were granted first-priority liens ("**Purported Lienholder Replacement Liens**") upon the Liquidating Trust Interests and the Liquidation Trust Interests Proceeds on account, and solely to the validity and extent, of, if any, statutory liens asserted in the Purported Lienholder Claims.

42.     Subject to approval of the Bankruptcy Court, and following an arms-length negotiation between the Liquidating Trustee and the Purported Statutory Lienholders, the Purported Statutory Lienholder Claims were settled as follows:

- **Settlement of WIC Claim:**

  a.     **Payment of Claim.** Subject to the granting of the Motion by the Bankruptcy Court and entry of the 9019 Order by the 9019 Approval Deadline, and upon receipt by the Liquidating Trustee of the Plan Sponsor's Settlement Funds, William will accept from the Plan Sponsor's Settlement Funds and in full and final satisfaction of the WIC Claim, an amount equal to Three Million Three Hundred Thousand and 00/100 Dollars ($3,300,000.00) (such amount, the "**William Claim Satisfaction Amount**").[15]   William's acceptance of the William Claim Satisfaction Amount is not intended to and shall not be construed as providing William a right to payment from any funds, assets, or property of the Liquidating Trust other than from the Plan Sponsor's Settlement Funds. The Liquidating Trustee shall pay the William Claim Satisfaction Amount to William no later than five (5) business days after the Liquidating Trustee receives the Plan Sponsor's Settlement Funds pursuant to the terms of the Plan Sponsor Settlement Agreement.

  b.     **Release of Liens**. Upon receipt of the William Claim Satisfaction Amount in immediately available funds not subject to stoppage or reversal, any and all of William's Purported Lienholder Replacement Liens will be discharged, cancelled, and released and shall be of no further force and effect; provided, however, the Liquidating Trustee will be authorized to take such action as may be necessary, and William will execute and deliver such further documents or instruments reasonably requested by the Liquidating Trustee, to effectuate the foregoing.

  c.     **Release of the Liquidating Trust**. Upon William's receipt of the William Claim Satisfaction Amount in immediately available funds not subject to stoppage or reversal), William acknowledges and agrees that William and its affiliates, agents, representatives, successors, and assigns will release, acquit, waive and forever discharge the Liquidating Trust and the Liquidating Trustee from and against all claims, contracts, disputes, agreements, covenants, demands,

---

[15] The William Claim Satisfaction Amount will be reduced to $3,207,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

obligations, controversies, suits, cross-claims, torts, costs, losses, attorneys' fees, damages, liabilities, expenses and causes of action, whether in law or in equity, whether known or unknown, whether anticipated or unanticipated, whether suspected or claimed, whether fixed or contingent, whether yet accrued or not, and whether damages have resulted from such or not, of any kind, nature or description, that William and/or its affiliates, agents, representatives, successors, and assigns has or may hereafter assert against the Liquidating Trust and/or the Liquidating Trustee and that relate, in any way, to the Bankruptcy Case.

- **Settlement of Brock Claim and Brock Adversary Proceeding:**

     a.    **Payment of Claim.** Subject to the granting of the Motion by the Bankruptcy Court and entry of the 9019 Order by the 9019 Approval Deadline, and upon receipt by the Liquidating Trustee of the Plan Sponsor's Settlement Funds, Brock will accept from the Plan Sponsor Recovery and in full and final satisfaction of the Brock Claim, an amount equal to Two Million Eighty Thousand Dollars ($2,080,000) (such amount, the "**Brock Claim Satisfaction Amount**").[16] Brock's acceptance of the Brock Claim Satisfaction Amount is not intended to and shall not be construed as providing Brock a right to payment from any funds, assets, or property of the Liquidating Trust other than from the Plan Sponsor's Settlement Funds. The Liquidating Trustee shall pay the Brock Claim Satisfaction Amount to Brock no later than five (5) business days after the Liquidating Trustee receives the Plan Sponsor's Settlement Funds pursuant to the terms of the Plan Sponsor Settlement Agreement.

     b.    **Release of Liens**. Upon receipt of the Brock Claim Satisfaction Amount in immediately available funds not subject to stoppage or reversal, any and all of Brock's Purported Lienholder Replacement Liens will be discharged, cancelled, and released and shall be of no further force and effect; provided, however, the Liquidating Trustee will be authorized to take such action as may be necessary, and Brock will execute and deliver such further documents or instruments reasonably requested by the Liquidating Trustee, to effectuate the foregoing.

     c.    **Dismissal of Adversary Proceeding**. Upon the Bankruptcy Court's approval of the Motion and Brock's receipt of the Brock Claim Satisfaction Amount in immediately available funds not subject to stoppage or reversal, the Liquidating Trustee and Brock will promptly file a joint notice of dismissal ("**Brock Dismissal Notice**") with prejudice of Brock's complaint in Adv. Case No. 16-51045 in the Bankruptcy Case, and Brock will not oppose entry of the Brock Dismissal Notice or dismissal of Adv. Case No. 16-51045.

     d.    **Release of the Liquidating Trust**. Upon Brock's receipt of the Brock Claim Satisfaction Amount in immediately available funds not subject to stoppage or reversal), Brock acknowledges and agrees that Brock and its affiliates, agents, representatives, successors, and assigns will release, acquit,

---

[16] The Brock Claim Satisfaction Amount will be reduced to $2,018,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

waive and forever discharge the Liquidating Trust and the Liquidating Trustee from and against all claims, contracts, disputes, agreements, covenants, demands, obligations, controversies, suits, cross-claims, torts, costs, losses, attorneys' fees, damages, liabilities, expenses and causes of action, whether in law or in equity, whether known or unknown, whether anticipated or unanticipated, whether suspected or claimed, whether fixed or contingent, whether yet accrued or not, and whether damages have resulted from such or not, of any kind, nature or description, that Brock and/or its affiliates, agents, representatives, successors, and assigns has or may hereafter assert against the Liquidating Trust and/or the Liquidating Trustee and that relate, in any way, to the Bankruptcy Case.

**F.**     **Treatment of Other Statutory Lienholders and the Class 1 Election Under the Plan.**

43.     Additionally, certain other creditors asserted Statutory Lien Claims against the Debtors: (a) Distribution International, Inc. *dba* E.J. Bartels ("**E.J. Bartels**") asserted a Statutory Lien Claim against the Debtors in the amount of $410,284.65; and (b) Matrix Service Inc. ("**Matrix**") asserted a Statutory Lien Claim against the Debtors in the amount of $6,654,215.05. Hereinafter, E.J. Bartels and Matrix shall be referred to collectively as the "**Other Purported Statutory Lienholders**".

44.     The Other Purported Statutory Lienholders validly exercised the Class 1 Election on their respective voting ballots Pursuant to Article 4.1 of the Plan.  As a result, Matrix is to receive a distribution of $333,604.00, and E.J. Bartels is to receive a distribution of $20,569.00.

**G.**     **Plan Sponsor Call Option Incremental Consideration and Priority of Payment of shortfall in Liquidating Trust Fees and Expenses**

45.     Upon the Plan Sponsor's exercise of the Plan Sponsor Call Option, and pursuant to Article 1.111 of the Plan and Section 9.11(c)(ii)(B) of the LLC Agreement, the incremental $1,000,000 identified in the price formula for the call price of the Liquidating Trust Interests (the "**Plan Sponsor Call Option Incremental Consideration**") is to be paid to the Liquidating Trust by the Plan Sponsor and is subject to the Purported Lienholder Replacement Lien until the Purported Lienholder Claims are determined by the Bankruptcy Court.

46.         After final determination of the Purported Lienholder Claims, and assuming the Purported Lienholder Claims are disallowed, the $1 million Plan Sponsor Incremental Consideration is to be applied to any existing or reasonably projected shortfalls in the Liquidating Trust's fees and expenses, and then to pay Chapter 11 Administrative Claims.[17]

**H.    Distribution of Plan Sponsor Settlement Funds Under the Global Settlement**.

47.         Based upon the terms of the Plan Sponsor Settlement Agreement, and by operation of the distribution provisions and other applicable terms of the Plan and related Plan Sponsor Transaction Documents, including without limitation Articles 1.111, 1.137 and 9.2 of the Plan, and section 5.6 of the Plan Sponsor Agreement, the $17 million[18] in Plan Sponsor Settlement Funds to be received by the Liquidating Trust will result in: (i) **$6,903,035.00** of the settlement proceeds allocated to payment in full and final satisfaction of the Plan Sponsor's obligations under the Plan Sponsor Note; (ii) **$1,000,000.00** of settlement proceeds allocated to the Plan Sponsor Call Option Incremental Consideration pursuant to Article 1.111 of the Plan and Section 9.11(c)(ii)(B) of the LLC Agreement; and (iii) **$9,096,965.00**[19] of settlement proceeds allocated to Call Price under Section 9.6(c)(ii)(A) of the LLC Agreement and on account of the Plan Sponsor's exercise of the Plan Sponsor Call Option.

48.         Pursuant to the priority and distribution provisions of the Plan and related Plan Sponsor Transaction Documents outlined above, the $6,903,035.00 will be allocated to the Plan Sponsor's Obligations under the Plan Sponsor Note.  It will be distributed first the Holders of Cash-Settled Claims (which include all Administrative Claims), and then to the Holders of DIP Facility Claims.

---

[17] See Plan at Art. 1.111.

[18] $16,690,000 if the Liquidating Trustee if the $17 million settlement amount from the Plan Sponsor is reduced pursuant to <u>Section 6</u> of the Plan Sponsor Settlement Agreement.

[19] This amount will be reduced by $310,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to <u>Section 6</u> of the Plan Sponsor Settlement Agreement.

49.     The $1,000,000.00 of settlement proceeds allocated to the Plan Sponsor Call Option Incremental Consideration will be distributed to the Liquidating Trust for payment of the Liquidating Trust's fees and expenses pursuant to pursuant to Article 1.111 of the Plan.

50.     The remaining $9,096,965.00[20] of settlement proceeds allocated to the Call Price under Section 9.6(c)(ii)(A) of the LLC Agreement and Article 9.2(c) of the Plan will be distributed as follows: (i) to the Purported Statutory Lienholders in their respective agreed settlement amounts identified above and in this Motion; (ii) to the Other Purported Statutory Lienholders: to Matrix in the amount of $333,604; and to E.J. Bartels in the amount of $20,569.00; (iii) the remaining balance will be distributed to Holders of Unsecured Claims, Pro Rata as contemplated under the Plan, and for payment of any and all U.S. Trustee Fees and any shortfall of the Liquidating Trust fees and expenses; and (iv) out of the remaining balance of the aforementioned $9,096,965.00[21] of settlement proceeds to be distributed to Holders of Unsecured Claims, any and all United States Trustee fees and any shortfall of Liquidating Trust fees and expenses will be paid prior to making any distribution to the Holders of Unsecured Claims.

51.     The above-described allocation of the $17 million[22] in Plan Sponsor Settlement funds pursuant to the Global Settlement as proposed herein can therefore be illustrated as follows:

### (i)     Distribution of Plan Sponsor Note Proceeds Under Global Settlement

The $6,903,035.00 in Plan Sponsor Note proceeds will be will be distributed first the Holders of Cash-Settled Claims (which include all Administrative Claims), and then to the Holders of DIP Facility Claims.

---

[20] This amount will be reduced by $310,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[21] This amount will be reduced by $310,000 if the $17 million settlement amount is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[22] $16,690,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

### (ii) Distribution Plan Sponsor Call Option Incremental Consideration Under Global Settlement

| | |
|---|---|
| 1   **Liquidating Trust Fees and Expenses**[23] | **$1,000,000** |

### (iii) Distribution of Call Price Proceeds Under Global Settlement

| | **Claim(s)** | **Distribution** |
|---|---|---|
| 1 | **Brock Claim** | **$2,080,000**[24] |
| 2 | **WIC Claim** | **$3,300,000**[25] |
| 3 | **Matrix Claim** | **$  333,604** |
| 4 | **E.J. Bartels Claim** | **$   20,569** |
| 6 | **Unsecured Claims (including Allowed bank deficiency Claims)**[26] | **$3,362,792**[27] |
| | **TOTAL** | **$9,096,965**[28] |

## RELIEF REQUESTED

52.     The Liquidating Trustee requests that the Court enter an order, substantially in the form of the proposed order attached hereto as **Exhibit 2**, approving: (i) the Global Settlement; (ii) the Plan Sponsor Settlement Agreement; and (iii) settlement of the Purported Lienholder Claims as proposed above and herein.

## BASIS FOR RELIEF REQUESTED

53.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution

---

[23] Any Plan Sponsor Call Option Incremental Consideration funds that remain after payment of the Liquidating Trust's fees and expenses in full will be distributed pursuant to Article 1.111 of the Plan.

[24] The Brock Claim Satisfaction Amount will be reduced to $2,018,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[25] The William Claim Satisfaction Amount will be reduced to $3,207,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[26] The following will be paid from the Unsecured Claims fund prior to any distribution to the Holders of Unsecured Claims: (i) any and all United States Trustee fees; and (ii) any shortfall of Liquidating Trust fees and expenses.

[27] This amount will be reduced to $3,207,792 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

[28] This total amount shall be reduced by $310,000 if the $17 million settlement amount from the Plan Sponsor is reduced to $16,690,000 pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

of bankruptcy cases. *In re Martin,* 91 F.3d 389, 393 (3d Cir. 1996); *In re Mavrode,* 205 B.R. 716, 719 (Bankr. D.N.J. 1997). To achieve these results, Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve settlements. In pertinent part, Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

54.     In applying this rule, a bankruptcy court should approve a settlement if it is fair and equitable, and in the best interest of the estate. *In re Cajun Electric Power Cooperative, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997). To properly make this determination, a bankruptcy judge "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 356, *Martin*, 91 F.3d at 393; *In re Jeffrey,* 70 F.3d 183 (1st Cir. 1995); *see also In re World Health Alt., Inc.,* 344 B.R. 291, 296 (Bankr. D. Del. 2006) ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities."). In examining the settlement, it is the responsibility of the bankruptcy court to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Spielfogel,* 211 B.R. at 143-144; *In re Telesphere Communications, Inc.,* 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994); *In re Carla Leathers, Inc.,* 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985); *In re W.T. Grant & Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied,* 464 U.S. 822 (1983).

55.     In making this determination, the Third Circuit has provided four criteria that a bankruptcy court must consider. Specifically, the bankruptcy court must examine: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Martin*, 91 F.3d at 393.

56.    When applying the above criteria to the facts of a particular case, a bankruptcy court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.  *Cajun* Electric *Power Cooperative, Inc.,* 119 F.3d at 356.  Likewise, a bankruptcy court does not have to conduct an evidentiary hearing as a prerequisite to approving settlement.  *In re Depositer,* 36 F.3d 582, 586 (7th Cir. 1994).  What the bankruptcy court must do, however, is to apprise itself of all the relevant facts and law so that it can make an informed, intelligent, and objective opinion with respect to approving the settlement. *Cajun Electric Power Cooperative, Inc.,* 119 F.3d at 356; *Depositer,* 36 F.3d at 586.

57.    In addition to these criteria, courts have also scrutinized additional factors, such as the competency and experience of counsel who support the settlement; the relative benefits to be received by individuals or groups within the class; the nature and breadth of releases to be obtained by the parties to the settlement; and the extent to which settlement is the product of arm's length bargaining.  *In re Spielfogel,* 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re 47-49 Charles Street, Inc.,* 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Dow Corning Corp.,* 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

58.    In making this determination, the bankruptcy court should not substitute its decision for that of the trustee.  *See Martin,* 91 F.3d at 395 ("Indeed, under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.").  Subject to undertaking the inquiries described above, the decision to approve or deny a particular compromise or settlement involving a bankruptcy estate lies within the sound discretion of the court. *See In re World Health Alt.,* 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986); *Nellis v. Shugrue,* 165 B.R. 115, 122–23 (S.D.N.Y.1994).   In addition, the Court should exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.,* 217 B.R. 41, 46 (Bankr.

S.D.N.Y. 1998); *see also Martin,* 91 F.3d at 393; *Shugrue,* 165 B.R. at 123 (noting that "the general rule [is] that settlements are favored and, in fact, encouraged by the approval process").

### A.      Probability of Success in Litigation

59.      The Liquidating Trustee has demonstrated that the Order Granting Motion to Enforce has a high likelihood of being affirmed on appeal; however, as in any litigation, there is a risk that the appellate court could rule in a manner that is unfavorable to the Liquidating Trustee and its creditor constituency, which could lead to a far lower recovery for the Liquidating Trust.  The Plan Sponsor has taken the position that the Liquidating Trust is entitled to only $11.5 million—as opposed to $21 million—as payment for the Plan Sponsor's exercise of the Plan Sponsor Call Option and on account of the Plan Sponsor Note.  Further, the Plan Sponsor has asserted certain alleged setoff claims that, combined with additional litigation arising under the Court's Order Granting Motion to Enforce, increases costs and delay to the Liquidating Trust.

60.      Likewise, while the Liquidating Trustee disputes the validity and priority of the Purported Lienholder Claims, the ultimate outcome of the Brock Adversary Proceeding and any declaratory judgment action to be filed for the WIC Claim under Wyoming law is uncertain.

61.      Although the Liquidating Trustee believes it would ultimately prevail in these various litigation and contested matters, there is always a risk of unfavorable outcome, which in this case could lead to a much lower recovery.  Accordingly, the first prong of the *Martin* test weighs in favor of approving the settlement embodied in the Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders, and the Global Settlement.

### B.      Likely Difficulties in Collection

62.      The remaining distributions in this case are highly dependent on collection on the Plan Sponsor Note and payment on account of the Plan Sponsor's exercise of the Plan Sponsor Call Option.  If the Liquidating Trust were required to collect on the Court's Order

Granting the Motion to Enforce, it could face significant hurdles, including without limitation the difficulty of levying on and liquidating the Plan Sponsor's assets, which upon information and belief primarily consist of membership interests in the Reorganized Debtors. As the Court has seen over the course of these cases, selling these assets has proven to be no easy task. Moreover, to the extent that the Order Granting the Motion to Enforce is not affirmed on appeal, the Plan Sponsor Note will not mature until 2022 with only incremental payments in the interim, thereby substantially delaying full collection and distribution to creditors.

63.     Accordingly, the difficulty of liquidating the Plan Sponsor's assets, the additional costs and uncertainty related thereto, and the possibility of delayed payment under the Plan Sponsor Note further supports approval of the Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders, and the Global Settlement.

### C.     Complexity, Expense, Inconvenience, and Delay

64.     The complexity of the facts and law surrounding the Motion to Enforce and the Purported Lienholder Lienholder Claims, and the costs and expenses related to further litigating issues relating thereto also strongly favor approval of the Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders, and the Global Settlement. The diversion of additional valuable time and resources to (i) pursue litigation of the Motion to Enforce and concluding a protracted appeal of Order Granting the Motion to Enforce, and (ii) litigate the Purported Lienholder Claims to conclusion would further deplete the Liquidating Trust by material amounts as additional professional fees and other costs are incurred.

65.     In addition, considering the significant costs and delays incident to an appeal and continued litigation over related issues, beneficiaries of the Liquidating Trust would be deprived of the time value of money while the litigation and appellate processes played out. Approval of the Plan Sponsor Settlement Agreement, the settlement with the Purported

Lienholders, and the Global Settlement ensures a speedy and material recovery of $17 million[29],

and maximizes value to the Liquidating Trust and its beneficiaries.

### D.   Paramount Interest of Creditors

66.    Most importantly, the Liquidating Trustee submits that the Plan Sponsor

Settlement Agreement, the settlement with the Purported Lienholders, and the Global Settlement

is in the best interests of creditors—particularly considering the substantial amount of recovery

that has been negotiated with the Plan Sponsor, the costs and delay associated with continued

litigation over the Motion to Enforce and Purported Lienholder Claims, and the interests of

creditors in receiving prompt and meaningful distributions.

67.    Even if one or more creditors is opposed to the relief requested in this Motion,

the Court still may approve the Plan Sponsor Settlement Agreement, the settlement with the

Purported Lienholders, and the Global Settlement over such objections as long as the *Martin*

factors, including the paramount interests of creditors, all weigh in favor of settlement.  *See, e.g.,*

*In re Key3MediaGrp., Inc.,* 336 B.R. at 97 (approving settlement of avoidance claims by debtor

over objection of largest creditors in case and noting that while creditors' interests should be

accorded proper deference, their objections "cannot be permitted to predominate over the best

interests of the estates as whole").

### CONCLUSION

68.    All of the above-enumerated settlement factors strongly support the Court's

approval of the Plan Sponsor Settlement Agreement, the settlement with the Purported

Lienholders, and the Global Settlement as being in the best interests of the Debtors' bankruptcy

estates and creditors.  The Plan Sponsor Settlement Agreement, the settlement with the Purported

Lienholders, and the Global Settlement constitute a fair resolution of the contested matters and

---

[29] $16,690,000 if the Liquidating Trustee if the $17 million settlement amount from the Plan Sponsor is reduced
pursuant to Section 6 of the Plan Sponsor Settlement Agreement.

adversary proceedings at issue, and are certainly above the lowest point in the range of reasonableness in light of the large discrepancy between the amounts asserted to be owed and the significant additional costs that would be involved in further litigating these issues.  The Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders, and the resulting Global Settlement are the product of arms' length bargaining between the Liquidating Trustee and the Plan Sponsor and the Purported Lienholders, each represented by experienced counsel well-versed in bankruptcy law and related issues.  For these reasons, the Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders, and the Global Settlement should be approved.

WHEREFORE**,** pursuant to Bankruptcy Rule 9019, the Liquidating Trustee respectfully requests that the Court enter an Order, substantially in the form attached hereto as **<u>Exhibit 2</u>:** (i) granting this Motion and the relief requested herein; (ii) approving the Plan Sponsor Settlement Agreement, the settlement with the Purported Lienholders set forth above and herein, and the Global Settlement; and (iii) granting the Liquidating Trustee such other and further relief as the Court deems just and appropriate.

[remainder of page blank – counsel signature page to follow]

Dated: September 25, 2018                    GREENBERG TRAURIG, LLP

                                             */s/ Dennis A. Meloro*
                                             Dennis A. Meloro (DE Bar No. 4435)
                                             1007 North Orange Street, Suite 1200
                                             Wilmington, Delaware 19801
                                             Telephone: (302) 661-7000
                                             Facsimile: (302) 661-7360
                                             MeloroD@gtlaw.com

                                             - and -

                                             David B. Kurzweil (Admitted *Pro Hac Vice*)
                                             Georgia Bar No. 430492
                                             Sean A. Gordon (Admitted *Pro Hac Vice*)
                                             Georgia Bar No. 777350
                                             Terminus 200
                                             3333 Piedmont Road, NE, Suite 2500
                                             Atlanta, Georgia 30305
                                             Telephone: 678-553-2100
                                             Facsimile: 678-553-2269
                                             KurzweilD@gtlaw.com
                                             GordonSa@gtlaw.com

                                             - and -

                                             Shari L. Heyen (Admitted *Pro Hac Vice*)
                                             Texas State Bar No. 09564750
                                             1000 Louisiana, Suite 1700
                                             Houston, Texas 77002
                                             Telephone: 713-374-3564
                                             Facsimile: 713-374-3505
                                             HeyenS@gtlaw.com

                                             *Counsel to JLL Consultants, Inc. in its*
                                             *capacity as Liquidating Trustee*